COYLE LINES, Inc. v. DUGAS.

No. 13619.

United States Court of Appeals, Fifth Circuit.

April 22, 1952.

Rehearing Denied May 27, 1952.

Richard B. Montgomery, Jr., New Orleans, La., for appellant.

Ernest A. Carrere, Jr., William J. Daly, New Orleans, La., for appellee.

Before SIBLEY, RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

This action was brought under Section 33 of the Merchant Marine Act of 1920,

41 Stat. 1007, 46 U.S.C.A. § 688, commonly referred to as the Jones Act, to recover damages for the alleged negligence of Coyle Lines, Inc., which caused the death of Saul Dugas. A jury trial was had with a verdict for the plaintiff, Mrs. Saul Dugas, Administratrix of the Estate of the decedent. The defendant appeals from the refusal of the Trial Court to direct a verdict in its favor at the close of all the evidence and to grant its motion for a judgment notwithstanding the verdict. As the case is presented, the sole issue is whether there is sufficient evidence to support the verdict.

The evidence, viewed in the light most favorable to the plaintiff, as it must be considered on this appeal, discloses that on the date of the tragic accident, December 15th, 1947, Dugas, an experienced and capable deckhand, was employed in that capacity by the defendant aboard its tug, the "B. T. DeBardeleben". The tug was attempting to float three barges, the tow of another vessel, the "Dr. E. W. Brown", which had gone aground in the Intracoastal Canal at, or near, Port Bolivar, Texas. Dugas had been ordered aft on the tug to "handle any line that had to be handled there." The master of the Coyle tug, Lingoni, was forward in the wheelhouse. The testimony is conflicting but at least one man was stationed on the barges.

The Intracoastal Canal at the point in question runs east and west. The barges were grounded on the south bank of the canal. At the time there was a north or northwest wind blowing at a velocity of between 25 and 30 miles per hour and a westward tidal current of from 4 to 5 miles per hour.

A line was run from the stern of the "B. T. DeBardeleben" to the last or most eastward barge and an attempt was made to free the barges by pulling directly across the canal. When this failed to dislodge the barges, the tug was allowed to drift with the current to a point abreast the middle barge and, while is was so engaged, the hawser was removed from the last barge and made fast to the middle barge. The towline from the barge was led onto the sterndeck of the tug, around one of the main towing bitts (which was on the stern-deck a little to the rear of the deckhouse), then led sternward to the cavel located in the middle of the sterndeck where it was secured by figure 8 turns. The last time Dugas was seen before the accident he was standing near the cavel on the deck actively handling the tow line. The forward motion of the tug caused by the current and the operation of the engine took up all the slack in the line and when it suddenly became taut it struck Dugas across the face fatally wounding him.

From his position in the wheelhouse Lingoni could not see Dugas, but he testified that he did not allow the tug to go forward until he received a shouted signal from Dugas to proceed. Although there is conflict in the testimony of two witnesses as to whether the other was present on the barge at the time of the accident, each claiming that he was the only man stationed there, both agreed that they did not hear Dugas signal. One of these witnesses testified that it was he who signaled Lingoni to proceed.

It was Dugas' job to man the line and see that it did not become fouled; he was supposed to handle the line that had to be paid out or taken in and it was his duty to see that the line was clear at all times. In the event the line became fouled Dugas was to clear it if it was possible to do so, but "If it was dangerous he wasn't." There is no direct evidence that the line became fouled, but it is clear from the evidence that Dugas was required to be in a position to take such steps as would be necessary to facilitate the proper handling of the line. As the tug began the last maneuver Lingoni instructed Dugas to take the line in and keep it clear.

There was evidence that the method of rigging used on the tug at the time of the accident was not that usually used in the type operation which was being performed and was not safe insofar as the man tending the line was concerned. It was explained that in order for Dugas to slack off the line, in the event it became necessary, he would have to be in a position between the deck cavel and the towing bitts, in the area where the line would be swinging as the tug engaged in the tugging operation. If

the line had been made fast to the tow bitts, Dugas could have stood behind the tow bitt where he would have been protected. From that position he "can slack this line from the tow bitt; that's what those bitts are there for, not to be made fast to that cleat [deck cavel]."

In denying appellant's motion for a judgment notwithstanding the verdict, the trial Judge stated, "I think there is ample evidence to support the verdict and I think this verdict is in accordance with the law and the evidence. I might add I think the jury did exactly what I would have done if I had been the trier of the facts."

The jury could properly have found from the evidence that the master of the tug was negligent in either or both respects, in failing to ascertain that Dugas was free from danger before he allowed the line to become taut, and that Dugas had not been furnished a safe place to work. Consequently, the Court did not err in denying the motion for an instructed verdict or for judgment notwithstanding the verdict.

Judgment affirmed.