William Neil HAMPTON, Appellant,

v.

MAGNOLIA TOWING COMPANY, Inc., Appellee.

No. 21229.

United States Court of Appeals Fifth Circuit.

Oct. 16, 1964.

Gibson Tucker, Jr., and Tucker & Schonekas, New Orleans, La., Ellis J. Farris, Vicksburg, Miss., for appellant.

William G. Beanland, Vicksburg, Miss., Brunini, Everett, Grantham & Quin, Vicksburg, Miss., of counsel, for appellee.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

WISDOM, Circuit Judge:

William Neil Hampton was employed as senior deck hand on board the M/V Yazoo, a standard river pushboat owned and operated by The Magnolia Towing Co. March 4, 1962, the Yazoo was proceeding north up the Illinois River pushing a flotilla of six barges. The barges were in two parallel strings and five were empty; the one loaded starboard barge rendered the tow unbalanced to starboard.

The Yazoo was faced up toward the port side of the tow. As night was falling, between 6:00 and 6:30 P.M., the captain decided to move the pushboat a little to the starboard to facilitate steering and reduce the strain on the rudder. The evening was cold and there were occasional snow flurries. A strong wind from the west or northwest was blowing across the river.

The Yazoo was attached to its tow by means of two steel cables (face wires), one on the starboard and one on the port. These cables were attached to bollards on the rearmost barges and ran back around a button or cleat on the pushboat to two Nabrico winches located near the bow. To carry out the move to starboard, the captain ordered Hampton to slack off the port face wire. Hampton accomplished this by disengaging the release on the port winch and paying out some cable. When there was sufficient slack, he went across onto the tow and moved the port face wire to an inboard bollard and returned to his position at his winch where he could tighten up slack when the move was finished. Another deck hand was stationed at the starboard winch to take up any slack created by the shift.

The Nabrico winches faced aft and had large take-up wheels on their inboard sides. Each take-up wheel had a wooden handle or knob to facilitate winding. The winches were equipped with ratchets made up of mechanical dogs (pawls) which fit into the teeth of large cog gears (ratchet wheels). When the dog was engaged, the cable could be taken up but could not be paid out. In order to create the necessary slack, Hampton disengaged the dog on his winch; when sufficient cable was paid out, he did not reengage the dog.

The captain ordered the engines stopped while the shift took place. There is a conflict in the testimony as to whether the Yazoo and its tow were drifting in the water making no headway or whether the flotilla was still moving slowly up-

stream. As the pushboat was maneuvered into its new position, it snubbed up against the barge and bounced back putting tension on the face wires. Hampton's dog was still disengaged and the tension caused the winch to pay out some cable. The sudden tension caused the take-up wheel to spin rapidly. Hampton did not anticipate this spin and the wooden handle on the wheel hit him on the arm as it swung around resulting in a comminuted fracture of his left ulna.

Hampton's suit against his employer combines a Jones Act (46 U.S.C.A. § 688) claim for negligence with a general maritime claim for unseaworthiness. His allegation of negligence is based on the theory that a reasonably prudent captain would not have attempted the shift in open water under the hazardous weather conditions prevailing at the time. Rather he would have tied up alongshore and effected the shift while the tow was stationary. Hampton contends that the captain's actions were particularly imprudent because the captain was unable to see either winch from his position in the wheelhouse and was able to communicate with his deck hands in order to coordinate the action only by means of an inconveniently placed two-way voice box.

The defendant contends that the shifting operation was purely routine and could be done and was done in all kinds of weather. The defendant asserts that Hampton's negligence was the proximate cause of the accident; that a reasonably prudent deck hand would have reengaged the mechanical dog after letting out the necessary slack in the face wire. Had the dog been engaged, the take-up wheel would not have run away and the handle would not have struck Hampton.

After denying defendant's motions for a directed verdict, the district court submitted the case to the jury on special interrogatories. The jury returned and found that the shipowner was negligent, the boat was not unseaworthy, and Hampton was not negligent. The jury awarded Hampton $10,000 as compensatory damages.

The defendant moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. The district court determined that the jury's verdict was not based upon sufficient evidence and granted the motion for a judgment n.o.v. Following the procedure dictated by Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147, the district court ruled conditionally on the motion for a new trial, denying it in the event that its judgment n.o.v. was reversed. The plaintiff brings this appeal from the judgment n.o.v. and the defendant cross-appeals the denial of the motion for new trial.

"The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts." Jacob v. City of New York, 1942, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166.

The Jones Act proffers this right and we exercise the greatest caution in denying it to any litigant. See Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668; Street v. Isthmian Lines, Inc., 2 Cir. 1963, 313 F.2d 35; Carter v. Schooner Pilgrim Inc., 1 Cir. 1956, 238 F.2d 702.

The limits under the Jones Act, incorporating the FELA by reference, are broadly drawn and broadly construed. The employer may be held liable if his negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R. Co., 1957, 352 U.S. 500, at 506, 77 S.Ct. 443, at 448, 1 L.Ed.2d 493 at 499; Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511. Contributory negligence and assumption of the risk are not adequate defenses. Jacob v. City of New York, supra.

306

■ In reviewing a judgment n.o.v. for the defendant, we must accept all facts which the plaintiff's evidence reasonably tends to prove and all favorable inferences which are fairly deducible. Cline v. Southern R. Co., 4 Cir. 1940, 115 F.2d 907; 5 Moore, Federal Practice § 50.13. If the evidence, when viewed in the light most favorable to the plaintiff, can possibly sustain his case, the judgment n.o.v. cannot stand.

"The discussions in the opinions in Galloway v. United States [1943], 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458, show that it is the jury's, not the court's, function to weigh the evidence, and it is only where there is lacking any evidence of substance upon which reasonable men could reach the result represented by the verdict that a judge may interfere." Binder v. Commercial Travelers Mut. Acc. Ass'n of America, 2 Cir. 1947, 165 F.2d 896 at 901.

"Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where * * * there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916.

■ In the case before us, we find that reasonable men could conclude that the captain of the pushboat was negligent in choosing to accomplish the shift in open water and that he should rather have tied the barges to a stationary object. Given the difficult weather conditions, the jury accepted the cautious judgment of the deck hand, enlightened by hindsight, over opinion of his experienced captain. While we might not make such a decision upon a hearing de novo, we do not feel that it is so unreasonable as to justify taking the matter from the jury's hands. For similar cases see Vickers v. Tumey, 5 Cir. 1961, 290 F.2d 426; and Coyle Lines v. Dugas, 5 Cir. 1952, 196 F.2d 59.

■ Different standards govern the district court's refusal to grant defendant's motion for a new trial. The district court is no longer bound by the strictures of the rule of substantial evidence. If the court should find the jury verdict to be contrary to "the weight of the evidence", it may, in its discretion, require a new trial.

"[H]aving permitted the jury to come to its conclusion on the facts, the trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." Moist Cold Refrigerator Co. v. Lou Johnson Co., 9 Cir. 1957, 249 F.2d 246 at 256.

"A motion for a directed verdict [or a judgment n.o.v.] must be based on a complete absence of any evidence to warrant submission to the jury; whereas, a motion for new trial concededly may be granted because the trial court concludes that the verdict is merely against 'the greater weight of the evidence.'" Citizens National Bank of Lubbock v. Speer, 5 Cir. 1955, 220 F.2d 889 at 891.

■ While the district court has greater range in setting aside a jury verdict for a new trial, our scope of review is severely limited. The lower court's action is discretionary; and we may interfere only when the court abus-

es its discretion or fails to exercise its discretion. This Court has said:

"A motion for new trial is addressed to the trial judge's discretion. He may grant a new trial if he thinks he has committed error; and he may grant one (and he alone can) because he thinks the verdict is wrong, though supported by some evidence. The exercise of his discretion is not ordinarily reviewable on appeal, though a failure to exercise discretion, or an abuse of it, may be corrected." Marsh v. Illinois Central R. Co., 5 Cir. 1949, 175 F.2d 498 at 500.

 In the present case, as in the Marsh case, the lower court refused a motion for a new trial while granting a motion for a judgment n.o.v. In both cases the district judge thought that there was no substantial evidence to support the jury verdict but that there were no other errors in the trial. In the case before us, the district judge, in his opinion, said: "The Court is constrained to say that there is no substantial evidence to be found in this record to support a judgment for the plaintiff. * * * The motion of the defendant for a new trial will be overruled but its motion for a judgment notwithstanding the verdict of the jury will be sustained." If there was no substantial evidence to support the verdict, then manifestly, the verdict was, in the judge's opinion, against the weight of the evidence. Notwithstanding the fact that we have ruled that there was evidence to support the jury's verdict, the district judge's opinion demonstrates that he could not have employed the "weight of the evidence" test in passing on the defendant's motion for a new trial. Accordingly, adopting the words of Judge Sibley, we remand the case to the district court:

"[The district judge] has in strong terms disapproved the verdict as contrary to the evidence, so much as to warrant setting the verdict aside and entering judgment for the defendant. We have reversed the entering of a final judgment, but it is evident that the new trial ought to be granted and would have been except for the misconception that absence of other error prevented it. The full discretion vested in the trial judge not having been exercised, we will remand the case with direction to the judge to grant a new trial instead of a judgment notwithstanding the verdict if he continues to think the verdict to be against the overwhelming weight of the evidence." Marsh v. Illinois Central R. Co., 5 Cir. 1949, 175 F.2d at 500.

See also Miller v. Tennessee Gas Transmission Co., 5 Cir., 1955, 220 F.2d 434.

Reversed and Remanded.