**Anthony J. ZANCA, Plaintiff,**

v.

**DELTA STEAMSHIP LINES, INC., Defendant.**

**Civ. A. No. 12292.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 28, 1965.

August J. Bubert, John A. Slavich, Roland J. Sternfels, New Orleans, La., for plaintiff.

Terriberry, Rault, Carroll, Yancey & Farrell, Rufus C. Harris, Jr., New Orleans, La., for defendant.

AINSWORTH, District Judge:

Plaintiff, Anthony J. Zanca, brought this action against Delta Steamship Lines, Inc. under the Merchant Marine Act of 1920, 46 U.S.C. § 688 (commonly known as the Jones Act), and under the General Maritime Law, alleging negligence, unseaworthiness and failure of defendant to provide him with maintenance and cure, growing out of an incident which occurred on the high seas aboard the vessel SS DEL MAR on which plaintiff was employed as a porter.

On the night of April 4, 1961, a seaman, Martin Spurgeon, mysteriously disappeared following a heated argument between him and another seaman which plaintiff overheard. Shortly after the affray plaintiff assisted another crew member in wiping blood from the clothes of the other participant in the fight. The next morning, after a search of the vessel, and of the sea on a reverse course, Spurgeon was declared to be lost overboard. An investigation of the circumstances surrounding Spurgeon's disappearance was made. Plaintiff was questioned by the ship's officers and reported what he had heard and seen. Fearful that he might suffer the same fate as Spurgeon, because he had overheard the altercation described and reported it to the Master, plaintiff appealed to the Master of the vessel for protective cus-

tody or repatriation. The Master, believing that plaintiff's fears were unfounded and that he was in no danger of bodily harm, declined plaintiff's request. Despite several repeated pleas, it was not until twenty-one days and five ports later that the Master finally discharged plaintiff at Santos, Brazil, from which point he was repatriated to the United States.[1]

During the interval between the disappearance of Spurgeon and plaintiff's discharge from the vessel, plaintiff's fears pyramided due to certain "warnings" from crew members which he interpreted as threats to his safety.[2] His anxiety grew to such proportions that he dreaded eating or drinking, fearful that he might be poisoned; he felt that he was being watched and had to be alert or cautious at all times; he was afraid of sleeping or being alone on the vessel for fear of being waylaid or ambushed, and made it a point to be always in the company of four or five men.

As a result of the frightening experience he had suffered, plaintiff, upon repatriation, was committed to the psychiatric ward of the U. S. Public Health Service Hospital at New Orleans, Louisiana, where he remained for approximately two and one-half months. He was readmitted on nine different occasions for psychiatric treatment.[3]

The question to determine in deciding if defendant is liable for damages under the Jones Act is whether or not the Master's refusal to heed timely plaintiff's request for protective custody or repatriation constituted negligence and, if so, whether or not such negligence is actionable under the Jones Act.

Captain Kourian, the Master, knew that plaintiff was a nervous individual and that he sincerely feared foul play; he also knew that he had visited the ship's doctor on several occasions on a previous voyage for "nervousness." Plaintiff made numerous requests to the Master for protection[4] or repatriation—all to no avail. There was medical testimony that plaintiff endured mental suffering as a result of his experience aboard the vessel.[5] Dr. Harold Conrad, a psychiatrist on the permanent staff of U. S. Public Health Service Hospital at New Orleans, who had examined plaintiff subsequent to his first eight admis-

---

1. The following is the itinerary of the voyage of the SS DEL MAR from the date on which Spurgeon was lost at sea to the time of plaintiff's discharge from the vessel:

| Port | Date of Arrival | Date of Departure |
| --- | --- | --- |
| St. Thomas, Virgin Islands | April 4, 1961 | April 4, 1961 |
| Rio de Janeiro, Brazil | April 14, 1961 | April 14, 1961 |
| Santos, Brazil | April 15, 1961 | April 16, 1961 |
| Buenos Aires, Argentina | April 19, 1961 | April 22, 1961 |
| Paranagua, Brazil | April 24, 1961 | April 25, 1961 |
| Santos, Brazil | April 26, 1961 | |

---

2. Plaintiff was warned by a watchman aboard, "Keep your eyes open." Another warning came shortly after the vessel arrived at Paranagua, Brazil, in the form of a note which read, "Beware; on guard," which note was surreptitiously placed on his bunk during a fire drill.

3. The patient's condition was variously diagnosed as "psychotic depressive reaction," "involutional melancholia," "acute brain syndrome," "drug intoxication and nembutal," "agitated depression," "schizophrenic reaction," "chronic paranoid type," "paranoid ideation and antisocial behavior," and "passive aggressive personality."

4. The vessel was equipped with a ship's hospital in which plaintiff could have been locked and observed.

5. The U. S. Public Health Service Hospital records show that plaintiff suffered from a psychotic depressive reaction, "initially arising out of a frightening experience aboard the patient's last ship where a man was allegedly murdered and the patient, as a witness, believed the murderers to be after him."

sions made a diagnosis of "passive aggressive personality" and stated that although he had seen no evidence to substantiate a diagnosis of psychosis, he had made the notation in the medical record on December 10, 1962 that plaintiff "remains a typical manipulative psychopath," an expression psychiatrists use to describe certain personality disorders, and that a person with a personality disorder could experience symptoms of depression or anxiety with major or minor stress, and much more easily than a normal personality.

■ The duty owed a seaman is set forth in 1 Norris, The Law of Seamen, § 583 at 688 (2d Ed.):

> "The degree of treatment and care which the vessel (through the master and the officers acting for her) owes to the seaman is the exercise of reasonable care to furnish such aid and assistance as ordinarily prudent persons would under similar circumstances."

■ We hold that the Captain, an experienced seaman who has been sailing as Master for several years, failed to exercise the required care under the circumstances in failing to place plaintiff in protective custody, particularly since he had the facilities to do so, and in failing to repatriate him at the first opportunity.

■ The test for actionable negligence under the Jones Act as enunciated by the United States Supreme Court is whether employer negligence "played any part, even the slightest, in producing the injury or death for which damages are sought." Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed. 2d 511 (1957); Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).[6]

■ We believe that plaintiff has met this Jones Act burden of proving negligence and causation. The evidence, although not overwhelming, preponderates in his favor. The failure of the Captain adequately to protect plaintiff from the consequences of his own anxiety constitutes actionable negligence under the circumstances, which negligence caused plaintiff to endure great mental suffering.

■ The evidence also shows that plaintiff suffered from nervousness or emotional illness prior to the incident aboard the SS DEL MAR. He testified that he had been afflicted with some type of nervous ailment in 1935. His background shows a history of an unstable individual whose actions veered far from the standards of normalcy. In 1938 or 1939 he served a prison term for 27 months at Lewisburg, Pennsylvania, for passing counterfeit money. Plaintiff admitted taking medication for his "nerves" at this time. Again in 1941 he was incarcerated at Sing Sing for 6 years and 8 months on an unarmed robbery conviction. The record also shows that he had domestic problems. Because of his prior history and the medical testimony as a whole, we are not convinced that the incident aboard the SS DEL MAR was the whole cause of the mental condition of which he now complains and for which he seeks damages. Accordingly, considering all circumstances, damages are fixed at the sum of $8,000, which we feel is fair and reasonable.

■ The claim for maintenance and cure is denied. Defendant voluntarily provided these benefits for a period of approximately one year through May 3, 1962, on which day he was pronounced fit for duty and on which he resumed his duties with the defendant by whom he was continuously employed for approximately six and one-half months, after which he was again hospitalized until maximum recovery was effected on January 30, 1963.

Judgment will be entered accordingly.

---

6. See also Hampton v. Magnolia Towing Company, 5 Cir., 1964, 338 F.2d 303; Page v. St. Louis Southwestern Railway Company, 5 Cir., 1963, 312 F.2d 84, 98 A.L.R.2d 639, and the later opinion in the Page case, 5 Cir., 1965, 349 F.2d 820.