Kearney D. SPEARS, Appellant,

v.

Glenn L. HOUGH, Appellee.

No. 71–1128.

United States Court of Appeals,
Eighth Circuit.

April 21, 1972.

Byrd & Kustoff, Frank C. Byrd, Memphis, Tenn., George Beal, Rapid City, S. D., for plaintiff-appellant.

Thomas E. Simmons, Rapid City, S. D., Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., for appellee.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

This is an appeal by the plaintiff-appellant in a personal injury action, arising out of a pheasant hunting accident in South Dakota on October 17, 1965. The jury returned a verdict for plaintiff but assessed his damages as "none." Judgment was entered that plaintiff recover nothing from the accident. A timely motion for new trial was filed and overruled. We affirm the trial court.

The question on appeal is whether under the evidence a jury could find for plaintiff as it did and then return a verdict of no damage.

Plaintiff, a dentist from Memphis, Tennessee, and the defendant, an orthodontist from Pittsburgh, Kansas, in the company of seven or eight others from the two named states, were pheasant

* Senior District Judge for the District of Nebraska sitting by designation.

hunting in South Dakota. Defendant fired his shot gun at a pheasant which was flying toward the plaintiff. Plaintiff testified that he was then 50 to 60 yards away from the defendant. Other witnesses estimated the distance as 95 paces and at from 80 to 100 yards. Pellets struck plaintiff in the face and on the hand which he had raised for protection. Pellets also struck his clothing. The clothing was not penetrated. Bruises, which plaintiff described as "the prettiest bull's-eye you ever seen, . . . because of the bruises which were blood clots in the tissue itself," were found over his body, chest and legs.

Following the accident, plaintiff and defendant and a Dr. Tillman drove to Valentine, Nebraska, where plaintiff was treated at the Sand Hill Hospital. One pellet located superficially on the side of plaintiff's nose was removed. X rays were also taken. He had a pellet just below his right eye, two in the area of the jawbone—one on each side, and one near his little finger on his left hand. None of these pellets have ever been removed. At Valentine some circular bandages were placed over the places where the shot had entered the skin. Plaintiff then returned to the hunting area and hunted for the next three days. This action was filed in September, 1968, nearly three years after the accident.

■ A reading of the record convinces the court that the trial judge properly submitted the issue of defendant's negligence to the jury. It discloses that there was sufficient evidence from which the jury could find for plaintiff and against the defendant on the issue of negligence and contributory negligence.

The only question which needs to be examined on this appeal is whether the jury's verdict of no damage is a permissible verdict under the evidence.

It is undisputed that plaintiff had medical and hospital treatment at Valentine. Bills for this treatment or service were not identified or offered in evidence. Answers to interrogatories which are attached as Appendix 2 of appellant's brief in this court show expense at Valentine of $12.50 to the hospital and $25.00 to the Valentine Clinic. Since these answers are not in evidence, and plaintiff made no other effort to prove the amount of these charges, it is clear that it would have been pure speculation for the jury to have returned a verdict which included expense at Valentine.

Depositions from the doctors who had examined or treated the plaintiff were offered in evidence. There were four such doctors: a radiologist, Dr. Blumen; two ophthamologists, Dr. Holmes and Dr. Lewis; and a psychiatrist, Dr. Moore. The interrogatories described above show medical expenses to Dr. Lewis of $75, to Dr. Holmes of $42.50, and to Dr. Blumen of $60. However, the only testimony relating to medical charges was by Dr. Lewis, who testified that the charge for his services was $50. The nature of his services is hereafter discussed.

Dr. Blumen read certain X rays taken at Valentine and pointed out the location of the pellets in plaintiff's face. Dr. Holmes testified that only the pellet located below the plaintiff's right eye could possibly have a relationship to the plaintiff's eye problems, but even that pellet could not have affected the tearing or watering of the right eye since the pellet was securely lodged in the bone. Dr. Holmes stated that the plaintiff's eye problem was common among people aged forty or more who do close work. No abnormality or obstruction to the tear duct in plaintiff's right eye was found. It was Dr. Holmes' opinion that the plaintiff had "unexplained excessive tearing of the right eye with no demonstrable cause." T. pp. 185, 186. In response to a hypothetical question, Dr. Holmes stated that the only way he could connect the eye problem with the hunting accident was by a process of elimination; since the symptoms were not present before the hunting injury,

the doctor was forced to assume that they were related to the accident.

Dr. Lewis described his examination and treatment of plaintiff, stating that he found plaintiff's vision "to be excellent, both for distance and near." He also found that the plaintiff's eye condition was unrelated to the accident. He testified that, based on the history, it was hard to come up with any other conclusion than that plaintiff's eye trouble was related to the accident but that he was mystified as to any physical or anatomical cause for it. We agree on reading Dr. Lewis' testimony that the jury could have concluded that the $50 charge was unrelated to the accident.

While the psychiatrist, Dr. Moore, testified generally that plaintiff's condition could be the result of a trauma, it was his opinion that plaintiff's response had been the result of the accident. He did not testify as to the amount of his charges. Thus, the jury could conclude, as they did, that plaintiff had not proven, by a preponderance of the evidence, any medical bills.

There was no evidence to support plaintiff's claim that he had suffered a loss of income as a result of the accident. To the contrary the evidence showed that plaintiff had a gross income of $33,985 in 1965, the year in which the accident occurred, and a gross income of $74,737 in 1969. Thus his income had more than doubled.

■■ The amount of damages in a personal injury action is a question of fact for determination by the jury, and an appellate court is ordinarily reluctant to invade such a jury function. The mere fact that the jury returned a verdict for a plaintiff but assessed the damages as "none" does not make such a verdict invalid or ambiguous nor does it necessitate a new trial. Joseph v. Rowlen, 425 F.2d 1010, 1011 (7th Cir.

1970); Wingerter v. Maryland Casualty Co., 313 F.2d 754, 756 (5th Cir. 1963). In Wright v. Hoover, 329 F.2d 72, 75 (8th Cir. 1964), liability was admitted by the defendant. However, the jury returned a verdict for no damages, which was affirmed by this court.

As stated by Mr. Justice Brandeis: "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct." Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933).

In light of the fact that at least two of plaintiff's medical experts were mystified as to the cause of his eye condition, it is not surprising that the jury declined to assess damages against the defendant. Plaintiff failed to show a loss of income and the fact that he continued his hunting the day of the accident and has never had the pellets removed shows that the immediate injury was not severe. It should also be noted that there was evidence from which the jury could conclude that plaintiff's eye trouble was not a result of the shooting accident but rather came from long hours of work in his dentistry practice.

■ The trial court properly instructed the jury that they were not bound by the opinions given by the experts, and could give those opinions the weight, if any, to which they deemed them entitled. The court also instructed the jury as to contributory negligence. No exceptions were taken by plaintiff to the instructions. Under the instructions and the evidence we conclude that there is no inconsistency in a verdict for plaintiff and a finding of no damages. Like the trial court, we believe the verdict of the jury should stand. The judgment is affirmed.