**John HERRMANN**

v.

**NICOR MARINE, INC.**

Civ. A. No. 83–3622.

United States District Court,
E.D. Louisiana.

Sept. 3, 1985.

Robert J. Young, Jr., Young & Richaud, New Orleans, La., for plaintiff.

David L. Carrigee, Burke & Mayer, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

## I. INTRODUCTION

Plaintiff brought suit under the Jones Act and the general maritime jurisdiction. Although the jury made him an award after finding that the vessel ACADIAN FREEDOM was unseaworthy in certain respects, they denied him recovery in accordance with the Jones Act.

The instructions given to the jury by the Court included the following:

"Unlike the Jones Act claim, with respect to which the plaintiff may recover if the alleged negligence is proved to be a slight cause of the injury sustained, in order to recover on a claim of unseaworthiness it must be proved that the unseaworthy condition was a *substantial cause of the injury* complained of. (Emphasis provided by the Court). Thus, an unseaworthy condition is a "legal cause" of damage only if it directly and in natural and continual sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the unseaworthy condition, the loss, injury, or damage would not have occurred".

## II. BACKGROUND

Captain Herrmann was hired for the ACADIAN FREEDOM in the latter months of 1982, after having passed a pre-employment physical. He had spent approximately forty-five days on a companion vessel to the ACADIAN FREEDOM, located in similar waters, and returned to the United States in good health in late 1982. During that forty-five day period, plaintiff was provided with bottled water and that vessel had an adequate filter system. He then returned to employment in mid-January, 1983 as captain of the ACADIAN FREEDOM. Within three weeks of his arrival, Captain Herrmann observed an abnormal urinary discharge and began daily medical treatment in the form of injections and antibiotics.

During the course of his medical treatment he noted, while taking a shower, that the water on the ACADIAN FREEDOM contained foreign substances with bad odor. On another occasion, he observed that the drinking water was malodorous, tasted bad, and contained sediment when left to sit in a glass for a length of time. Bottled water was not provided on the ACADIAN FREEDOM. The Court notes, however, that the unusual episodes relative to the use of water took place after Captain Herrmann noticed his abnormal urinary discharge.

## III. OPINION

The thrust of this application for judgment N.O.V., or for a new trial is the matter as to the causation of the type of injury which Captain Herrmann allegedly sustained, and which resulted in a colostomy and other complicated medical conditions. As the Court appreciates the position of counsel, each relies upon the testimony of Dr. Gathright to establish, or refute the causation of plaintiff's injury.

### (A) *Summary of Dr. Gathright's Deposition*

Dr. Gathright diagnosed Captain Herrmann's condition as a rectourethral fistula, which he states is an extremely rare condition, especially when it appears to result from an infection. The usual cause is cancer of the prostateal or irradiation treatment for prostatic cancer.

Stedman's Medical Dictionary, 1979 Edition, defines a fistula as "an abnormal passage leading from an abscess cavity or a hollow organ to the surface, or from one abscess cavity or organ to another". The word rectourethral indicates that this is a

fistula connecting the rectum and the urethra.[1]

Captain Herrmann, after returning from Nigeria, was referred to Dr. Gathright of Ochsner Clinic by Dr. Latourette of Pensacola, Florida. Plaintiff told the doctor that some six months previously he had a white pus-like discharge from his penis which was not venereal, and there had been a diagnosis of a rectovesical fistula.[2] However, Dr. Gathright identified this as a rectourethral fistula, which is an opening between the rectum and the urethra.

The Captain alleges that contaminated water in Nigeria, provided on the ACADIAN FREEDOM, contained bacteria which triggered his infection. An extra-intestinal (i.e. foreign) E-coli strain would be an example of bacteria that is not commonly found in the intestinal tract. There are certain strains of E-coli which are uncommon in the American population but which would be common in other countries—this is the cause of travelers diarrhea. The typical source of such infections is fecal contamination of water or food.

Dr. Gathright found it is extremely difficult to pin-point a cause of any kind for Captain Herrmann's condition. He was unable to identify a source of infection in Plaintiff's anal glands, which remained normal at all times. After diagnosing the infection, the doctor recommended a temporary colostomy to divert the fecal stream away from the infection and allow that area to heal. This operation was performed on August 29, 1983 under general anesthesia. Plaintiff was subsequently discharged on September 8, 1983. He was readmitted on February 19, 1984 for a cystoscope exam and discharged February 26, 1984. Treating physicians still observed a fistula in the bowel wall, and permitted further healing to take place. They also found a fistula of perhaps an inch in length which had not been noticed before.

Dr. Gathright explained that everybody has billions of E-coli in their intestinal tracts, and as long as the coliform bacteria are confined to the bowel, and there is no break in its mucous lining or any penetration, normal conditions prevail. There is the possibility, here, that a foreign body such as a toothpick, a bone, a sharp piece of vegetable material, or something of that sort penetrated the intestinal wall, allowing the bacteria access to the area where the fistula developed. Because bacteria become a problem once they penetrate the barrier of the intestinal mucosa, it must be assumed that some bacteria—not necessarily E-coli—gained access to the deeper tissue.

Dr. Gathwright testified that there is no way (Tr. 28) "to say this infection began at such and such a site and progressed to here, or it began at that site, or it began at some distant site and manifested itself there." At page 30, he states that there is nothing to indicate it came from the urinary tract side "nor is there anything to indicate that it came from the rectal side as concerns our exam six months down the line". There is no way of going back to reconstruct the events that began six months prior.

Dr. Gathwright further opined: "There doesn't seem to be any reason to believe that there is any exotic, [bacteria] if you will, introduced to produce them. You have plenty of bacteria there on any normal day that will cause virulent infection. (Tr. 31) It's simply kept from happening by the fact that the bacteria are isolated from the deeper tissue by the mucosal barrier of the intestine (pgs. 31 and 32). They are there, and if you get them into an abnormal place, that is, beneath that mucosal barrier, you got yourself a rip-roaring infection and you really don't have to hunt for unusual bacteria to do it; the ones you have in your bowel will do it on a regular basis." (pg. 32). At page 33 the doctor said he did not recall plaintiff giving him a history of "working on a vessel off the coast of West Africa in possibly February 1983" and coming "in contact with what he believed to be contaminated water".

1. The urethra is the canal leading from the bladder, discharging the urine externally.

2. A fistulous communication between the rectum and bladder.

## III. THE COURT'S REASONS FOR GRANTING A NEW TRIAL

█ Dr. Gathright's testimony establishes two things: first, something penetrated plaintiff's intestinal wall and the sharp object has not been identified; second, the bacteria normally indigenous to plaintiff's digestive tract are as likely the source of the infection as the allegedly impure water aboard the M/V ACADIAN FREEDOM. The latter issue is the focus of the Court's reflection on that portion of defendant's motion which asks for a new trial. Simply put, plaintiff did not present evidence which would exclude his own, "normal" digestive tract bacteria as the "substantial cause of the injury complained of". Therefore, rather than being able to identify bacteria in contaminated water as the sole cause of plaintiff's harm, the jury was forced to guess as to the cause of plaintiff's infection and, obviously, the sea-worthiness of the M/V ACADIAN FREEDOM. Accordingly, based on the deposition of Dr. Gathright which was unable to determine the cause of plaintiff's infection, the Court feels that the jury's verdict was against the weight of the evidence.[3]

The jury charges instructed the jury that "in order to recover on a claim of unseaworthiness it must be proved that the unseaworthy condition was a substantial cause of the injury complained of". The jury was further instructed, "Thus, an unseaworthy condition is a 'legal cause' of damage only if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the unseaworthy condition, the ... injury ... would not have occurred". Assuming that the jury identified the contaminated water aboard the ACADIAN FREEDOM as an unseaworthy condition, the Court finds that the evidence fails to connect this condition with plaintiff's injury. On the contrary, Dr. Gathright testified that plaintiff's own indigenous bacteria could have caused the fistula, provided that the intestinal lining had been

pierced. Accordingly, a new trial on the issue of causation must be afforded to defendant as the jury's verdict was against the weight of evidence as to causation.

█ Rule 59(a) of the Federal Rules of Civil Procedure provides:

"A new trial may be granted to all or any of the parties *and on all or part of the issues* (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." (emphasis added by the Court).

When a new trial is granted as to part of the issues in an action, the portions of the original verdict and judgment as to the other issues stand and are merged into the judgment following the last jury verdict. *Weymouth v. Colorado Interstate Gas Co.*, 34 F.R.D. 4, 6 (N.D.Tex.1963), *affirmed*, 367 F.2d 84 (5th Cir.1966). Further, an error at trial relating to one issue that does not affect the determination of other issues does not justify granting a new trial on any issue except the tainted one. *Eximco, Inc. v. Trane Co.*, 737 F.2d 505, 513 (5th Cir.1984), *rehearing denied and granted in part*, 748 F.2d 287 (5th Cir.1984); *Nisho-Twai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1538 (5th Cir.1984).

█ Among the grounds for a new trial are that the verdict is against the weight of evidence, that the damages are excessive, or that for other reasons the trial was not fair. *Montgomery Ward and Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). One of the grounds most commonly raised, as here, is that the verdict is against the weight of the evidence. Wright & Miller, Federal Practice and Procedure: Civil § 2805. The power of the federal court to grant a new trial on the ground that the verdict was against the weight of the evidence is clear. *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2

---

**3.** Shortly after entering the deliberating room, the jury requested that Dr. Gathright's deposition be provided to them. However, the Court was unable to send this portion of the testimony to them.

L.Ed.2d 953 (1958); *Montgomery Ward & Co. v. Duncan, supra,* 311 U.S. at 251, 61 S.Ct. at 194. On a motion for a new trial—unlike a motion for a directed verdict or for judgment notwithstanding the verdict—the Court may set aside the verdict even though there may be evidence to support it. *U.S. for Use of Weyerhaeuser Co. v. Bucon Construction Co.,* 430 F.2d 420, 423 (5th Cir.1970); *Hampton v. Magnolia Towing Co.,* 338 F.2d 303, 306 (5th Cir.1964). Further, the Court is free to weigh the evidence for itself, i.e. "the trial judge must evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of evidence that a new trial is necessary to prevent injustice". *Edgehouse v. New York, Chicago & St. Louis Railroad Co.,* 213 F.Supp. 339, 339–40 (W.D.Pa.1962). However, a new trial should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great, and not merely the greater, weight of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 362–63 (5th Cir.1980), *affirmed in part, reversed in part, and remanded,* 687 F.2d 108 (5th Cir.1982); *Love v. Sessions,* 568 F.2d 357, 361 (5th Cir.1978); *Spurlin v. General Motors Corp.,* 528 F.2d 612, 620 (5th Cir.1976).

For reasons cited above, and in accordance with the teachings of the Fifth Circuit, IT IS HEREBY ORDERED that a new trial be granted on the issue of causation and IT IS FURTHER ORDERED that the jury's verdict absolving defendant of negligence under the Jones Act be maintained. The Motion for Judgment N.O.V. is DENIED.