### STANDARD FIRE INSURANCE COMPANY

v.

### William R. MITCHELL, Jr.

### Civ. A. No. B–86–0462–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

July 8, 1987.

Clint Lewis, Beaumont, Tex., for plaintiff.

Terry Doyle, Port Arthur, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

William R. Mitchell owned a home in Port Arthur, Texas, upon which he obtained a policy of fire insurance covering the building and contents. Shortly after he paid a renewal premium on the policy, and during his absence, a fire started in the home, which damaged the structure and the contents. The Port Arthur fire department responded promptly, and extinguished the blaze prior to destruction of the building. Investigation revealed the fire was probably of incendiary origin, in that it had several points of origin. Mitchell made a claim under his insurance policy, and filed a sworn proof of loss.

Standard Fire Insurance Company, after conducting what it deemed to be a thorough investigation, including an examination of Mitchell under oath, resisted payment under the policy, and Standard Fire, by filing this suit, sought a declaration of its non-liability to Mitchell for the loss and for recoupment of proceeds previously paid to Mitchell's mortgagee. Standard Fire asserted the affirmative defense of arson. Mitchell counterclaimed, denying arson, and asserting that he was entitled to the proceeds of the policy, attorneys' fees and interest. At the close of the evidence, the court submitted interrogatories to the jury, which failed to find (1) that Mitchell intentionally set the fire or caused it to be set;

did find (2) that Mitchell's damages for repairs to his house was "0" damages; and found (3) that Mitchell's loss of personal property was "0."

Upon return of the verdict, the court and the attorneys were concerned with what was perceived to be an apparent conflict in the jury's answers to the interrogatories. Following an overnight recess, the court inquired of both parties' attorneys if either desired the jury to be re-instructed by the court, and return for further deliberation in order to resolve the "conflict." The court also inquired of Mitchell's attorneys if they desired the jury to be returned to reconsider its answers to interrogatories 2 or 3 without further instruction by the court. Although so invited by the court, counsel for both parties declined such requests, and both moved that the verdict, as returned by the jury, be accepted and filed. Mitchell's attorneys thus had ample opportunity to request further instruction and deliberation by the jury, but knowingly declined.

After the jury's verdict was accepted and filed, Mitchell moved for judgment on the jury's answer to the first interrogatory, and for judgment notwithstanding the verdict on the second and third interrogatories. The court denied Mitchell's motion, and entered judgment in accordance with the jury's verdict. Mitchell now moves for a new trial, arguing that the jury's no-damages verdict goes against the great weight and preponderance of the evidence; that the jury failed to follow instructions; and that the jury was prejudiced by the improper admission of evidence relating to Mitchell's past insurance claims, and threats he allegedly made to a witness.

It is settled that a motion for new trial should be granted when the jury's verdict is against the great weight of the evidence. *Citizens National Bank of Lubbock,* 220 F.2d 889, 891 (5th Cir.1955). In this respect, the Fifth Circuit in *Hampton v. Magnolia Towing Co.,* 338 F.2d 303, 306 (5th Cir.1964), states:

> Different standards govern the district court's refusal to grant defendant's motion for a new trial. The district court is no longer bound by the strictures of the rule of substantial evidence. If the court should find the jury verdict to be contrary to "the weight of the evidence" it may, in its discretion, require a new trial.

Furthermore, the court, in the exercise of its discretion may grant a new trial when needed to prevent or avoid an injustice. *Delta Engineering Corp. v. Scott,* 322 F.2d 11, 15 (5th Cir.1963). As to this point, the Fifth Circuit in *United States v. Bucon Construction Co.,* 430 F.2d 420, 423 (5th Cir.1970), has stated:

> In passing on a motion for a new trial, the court may and should exercise sound discretion and its ruling thereon will not be reviewed in an appellate court in the absence of a clear abuse of discretion. A trial judge, on a motion for a new trial, may set aside a verdict and grant a new trial if, in his opinion, "the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."

The exercise of that power is not in derogation of right to trial by jury, but is one of the stark safeguards of that right.

■ Mitchell's most significant argument relates to the inconsistency in the jury's answers to the interrogatories. The charge submitted to the jury inquired about the cause of Mitchell's fire, and asked the jury to assess damages unless it found in favor of Standard Fire on the arson defense. Since the jury did not find for Standard Fire on its arson defense, Mitchell argues, the jury was not free to find that Mitchell sustained no damages as a result of the fire.

■ The court find's Mitchell's argument unpersuasive. There were two separate burdens of proof which were borne by the respective parties in this case. Standard Fire had the burden of proving arson. Damages were not liquidated, and Mitchell had the separate and distinct burden of proving his damages to the jury's satisfaction by a preponderance of the evidence. As a matter of law, Standard Fire was entitled to a jury trial on any disputed fact issue. In a case such as this, involving

alleged inconsistencies in the jury's answers to interrogatories, the trial court, if possible, is obliged to reconcile any apparent inconsistency. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores v. Ellerman Lines,* 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). The failure of a trial court to accept the jury's resolution of disputed issues of fact denies the affected litigant its right to trial by jury under the 7th Amendment. *Id.*

In many state courts, the verdict in the present case would be fatally defective. However, under the federal rule, it is clear that a failure to award damages does not by itself render a verdict invalid. *Phillipine National Oil Co. v. Garrett Corp.,* 724 F.2d 803 9th Cir.1984); *Spears v. Hough,* 458 F.2d 529 (8th Cir.), *cert. denied,* 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972); *Wingartner v. Maryland Casualty Co.,* 313 F.2d 754 (5th Cir.1963); *Pitcher v. Rogers,* 259 F.Supp. 412 (N.D. Miss.1966).

In *Spears,* the jury found the defendant guilty of negligence arising out of a hunting accident, but awarded no damages. The court held:

> The mere fact that the jury returned a verdict for the plaintiff but assessed damages as "None," does not make such a verdict invalid or ambiguous, and does not necessitate a new trial. *Spears,* at 531.

In *Phillipine National Oil,* the trial court instructed the jury that one of the elements of the tort of negligent misrepresentation consisted of sustaining damages as a result of reliance on the truth of the representations made by the defendant. The jury, nevertheless found in the plaintiff's favor on the negligent misrepresentation claim, but awarded no damages. The district court upheld the verdict, and the circuit court affirmed:

> [T]he evidence about the damages [plaintiff] sustained from [defendant's] misrepresentations was in conflict. The jury could have found that [plaintiff] sustained no damage from any misrepresentations.

*Phillippine National Oil Co.,* 724 F.2d at 806.

In the case at bar, the evidence concerning Mitchell's damages was also in conflict. The jury (quite reasonably, the court believes) attached little credibility to the testimony of Mitchell's expert witness, who had been assigned a contingent interest of 8% of Mitchell's claim, having solicited the contingency a few days after the fire. Further, the jury could have rejected Mitchell's own testimony as to his damages in light of the evidence showing he had claimed loss of personal property which was either nonexistent, not lost, inflated as to value, or which had been removed from the house prior to the fire. The evidence also showed Mitchell had given inconsistent answers regarding his indebtedness as of the date of the loss.

Finally, the jury had ample evidence before it to find that all of the damages to the house had been previously paid to Mrs. King, the mortgagee. Mrs. King testified that as a result of a settlement worked out between her and Standard Fire, she had received the sum of $19,161.83, which represented the balance due on her first lien to Sabine Bank and the balance due her from Mitchell on the contract of sale. This figure closely approximates Mitchell's proof as to the amount it would cost to repair his residence as a result of the fire.

The house was estimated by at least one witness to be worth "about $22,500", including the lot. This was the original purchase price. It is clear that the jury did not particularly believe Mitchell's testimony concerning his damages, and did not desire him to recover anything in addition to that which he had already benefited by the payment in full of the remaining debt on his contract for deed. Mitchell in fact, did so benefit because the payments to Mrs. King were in satisfaction of Standard Fire's obligation to pay for fire damages. It was not obliged to pay Mitchell's contract of sale as such, but only to pay damages for the house if such damages were recoverable. The original contract of sale

954

stipulated that insurance proceeds would be paid at the option of Mrs. King to her, instead of Mr. Mitchell. Mitchell did not deny this, nor take a contrary position during the trial, nor in his pleadings. In fact, the contract for insurance provided that the company could pay its additional insured, Mrs. King.

■ It is within the sole province of the jury to judge the credibility of the witnesses and within the jury's power, as the court instructed, to accept or reject all or part of any witness's testimony. The jury's verdict in this case was fully supported by the evidence and not inconsistent for failing to award Mitchell damages.

■ The court also rejects Mitchell's final argument that a new trial is warranted because the court admitted evidence of Mitchell's prior insurance claims, and of character evidence, including threats allegedly made against his ex-wife in the event she testified for Standard Fire, which she did. In this case, evidence of Mitchell's past claims was admissible under Federal Rules of Evidence 404(b), to show motive, opportunity, intent, and preparation. *Aetna Casualty & Surety Co. v. Guynes*, 713 F.2d 1187 (5th Cir.1983). The evidence concerning Mitchell's actions was also admissible under Federal Rules of Evidence 405(a); *United States v. McCollom*, 664 F.2d 56, 58 (5th Cir.1981). Since the jury found in Mitchell's favor on the arson issue, any error committed by the court in admitting this evidence is harmless.

### ATTORNEY'S FEES

■ This suit was brought by Standard Fire as a declaratory judgment action in federal court one day before Mitchell could have brought a coercive suit in state court.[1] Standard Fire did not carry its burden in the declaratory judgment action since the jury failed to find Mitchell intentionally set or caused to be set the fire in question. Since Mitchell prevailed, it is the opinion of the court that he should be awarded attorney's fees for having successfully defended

the declaratory judgment action. However, no fees will be awarded to Mitchell's attorneys for their role and efforts expended in prosecuting Mitchell's counterclaim.

### CONCLUSION

Mitchell's motion for a new trial is DENIED. However, the court in the exercise of its discretion awards $7500 to Mitchell's attorneys for the time and effort expended in having successfully defended the declaratory judgment action.

---

1. The policy in question provided that the insured could not bring suit until 30 days after filing a proof of loss. Standard Fire brought this suit 29 days after Mitchell filed his proof of loss.