**Michael JONES and Harold Jones, Plaintiffs–Appellants,**

v.

**WAL–MART STORES, INC., and Shinn Fu of America, Inc., Defendants–Appellees.**

No. 87–1865.

United States Court of Appeals, Fifth Circuit.

April 24, 1989.
Rehearing Denied May 19, 1989.

Michol O'Connor, Houston, Tex., for plaintiffs-appellants.

Jack O. Tidwell, Odessa, Tex., for defendants-appellees.

Before GEE, SNEED * and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants, father and son, challenge the district court's denial of their motion for a new trial in their products' liability suit involving defective jacks which collapsed while raising a trailer. The jury in this diversity case awarded medical damages below the stipulated amount, no damages in several categories for Michael Jones, the son, and no damages at all for Harold Jones, the father, (except $200 for "medical expenses"). The Joneses argue that each of these different jury findings is against the great weight of the evidence and necessitates a new trial. We find the stipulated medical damages were correctly enforced by the trial judge, but that the jury's verdict must be reversed for failure to award all the damages to which Michael Jones and his father, Harold Jones, were entitled under the clear weight of the evidence. We affirm in part and reverse in part, remanding for a new trial on the issue of damages.

### Facts and Prior Proceedings

Michael Jones used two jacks, manufactured by Shinn Fu and sold by Wal–Mart, the two appellees, to raise his mobile home in order to repair its foundation. While he was under the mobile home, the support collapsed and Michael's right hip was broken when the mobile home fell. Harold Jones, was helping his son when the mobile home collapsed. The falling mobile home hit Harold's head, but the major injury was a crushed foot, which was pierced and impaled with screws and trapped so that he could not move.

The jury found liability for a defective product and awarded damages to Michael Jones as follows:

| | | |
|---|---|---|
| A. | Past physical pain | $ 5,000 |
| B. | Future physical pain | 25,000 |
| C. | Past mental anguish | 5,000 |
| D. | Future mental anguish | None |
| E. | Past medical expenses | 4,500 |
| F. | Future medical expenses | 30,000 |
| G. | Physical impairment in the past | 5,000 |
| H. | Physical impairment that, in reasonable probability, Plaintiff will suffer in the future | 30,000 |
| I. | Physical disfigurement in the past | None |
| J. | Physical disfigurement that, in reasonable probability, plaintiff will suffer in the future | None |
| K. | Loss of earnings in the past | 1,500 |
| L. | Loss of earning capacity in the future | None |

The jury found no damages at all for Harold Jones as to all his claims, those based upon past physical pain, future physical pain, past mental anguish, future mental anguish, and physical impairment in the past. The jury did add a category which it called "Medical Expense" for which it awarded $200.

The jury's total award to Michael Jones was $106,000. The trial court, without not-

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

ing the reason for doing so, stated that it was of the opinion that Michael Jones should receive $114,000 in damages. While it is not clear from the judgment why the $8,000 was added, both the Joneses and Wal–Mart agree that the judge added the $8,000 to the damages to raise past medical expenses from $4,500 to $12,500.

The jury also assessed percentages of responsibility for causation and determined that Michael and Harold each were found to be 32% responsible for causing the accident, while the defective jacks were 36% responsible. The court, however, assessed all damages against Shinn Fu and Wal–Mart.[1]

After judgment the Joneses moved for a new trial. The motion was denied. They now appeal this denial on three grounds. They contend that the jury (1) failed to return the full amount of medical damages stipulated, (2) failed to award Michael Jones damages in three categories where damage was shown, and (3) failed to award Harold Jones any damages (except medical) even though injury and damage was shown. We examine each of these grounds of appeal in order.

I. *Michael's Past Medical Expenses*

▮ Michael Jones provided undisputed evidence at trial that his past medical expenses were $12,500. While that figure is mentioned nowhere in the pretrial order, both parties agree that $12,500 was the stipulated amount of past medical expenses. Michael Jones now argues that the addition by the trial judge of $8000 to the total damages was an additur, which is prohibited under the Seventh Amendment, at least where the amount of damages in is dispute. *Dimick v. Schiedt*, 293 U.S. 474,

55 S.Ct. 296, 79 L.Ed. 603 (1935); *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976); *Silverman v. Travelers Insurance Co.*, 277 F.2d 257, 264 (5th Cir.1960). If the trial judge finds the damages assessed inadequate as a matter of law, then the plaintiff deserves a new jury trial. An additur is a constitutionally inadequate substitute because it would require the plaintiff to "forego his constitutional right to the verdict of a jury and accept 'an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.'" 11 C. Wright and A. Miller, Federal Practice and Procedure 2816 (1973), quoting *Dimick v. Schiedt*, 293 U.S. at 486–487, 55 S.Ct. at 301. When the plaintiff stipulates the amount of his damages however, as here, he waives his right to a jury verdict regarding the amount. Hence, Michael Jones' argument that the trial court's action was an additur requiring a new trial is not well founded.

▮ Both parties agree that Michael Jones' past medical expenses were stipulated. Rule 16 of the Federal Rules of Civil Procedure allows for such pretrial stipulations, which are binding unless modified, *United States v. Tampa Bay Garden Apartments, Inc.*, 294 F.2d 598, 606 (5th Cir.1961), and should be strictly enforced. *City of Lakeland, Florida v. Union Oil Co. of California*, 352 F.Supp. 758, 768 (M.D.Fla.1973). Because of the stipulation, the issue of past medical expenses should never have gone to the jury. The jury should merely have considered the issue of liability for the agreed medical expenses. After the jury returned its verdict, however, the trial court corrected the submission to the jury and raised the damages to

---

**1.** It is unclear from the record why the trial judge assessed the complete amount of damages against the defendants, rather than awarding pro rata damages. The jury found Shinn Fu and Wal–Mart liable only on a theory of design defect, a strict liability theory. (The jury also found negligence on the part of the defendants, but held that the negligence was not a cause of the accident).

Because this suit was filed before September 2, 1987 and after July 13, 1983, the comparative causation system propounded in *Duncan v.*

*Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984) applied. *See Jones v. Towmotor Corporation*, 779 F.2d 1133, 1135–36 (5th Cir.1986).

It was suggested at oral argument by the appellees that the court submitted a defense, misuse, which is apparently no longer valid under Texas law in product liability cases. Shinn Fu and Wal–Mart, regardless, do not appeal the trial court's allotment of damages against them in this case, and therefore we do not consider this issue on appeal.

the stipulated amount. Because this was an issue over which the jury had no control, it was within the trial court's power to ignore the jury finding and enforce the stipulation.

Once liability was determined, Michael Jones was entitled to the stipulated damages as a matter of law. It would be a useless formality to grant a new trial on this issue since the trial court would be required to grant summary judgment for the stipulated amount. *See Taylor v. Green,* 868 F.2d 162, 165 (5th Cir.1989). Trial courts must be able to enforce stipulations; this court's enforcement of the stipulated past medical expenses was not reversible error.

II. *The Sufficiency of Michael Jones' Damages*

■ The Joneses requested a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, claiming that the jury's award of damages for both Michael and Harold went against the great weight of the evidence. Their motion was denied. A federal trial court may in its discretion set aside a jury verdict and order a new trial if the amount of the verdict is excessive or inadequate. *Lucas v. American Manufacturing Co.,* 630 F.2d 291, 293 (5th Cir. 1980). When a new trial is requested on such evidentiary grounds, the motion should not be granted unless the verdict is against the great, not merely the preponderance, of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 362–63 (5th Cir.1980); *Herrmann v. Nicor Marine Co., Inc.,* 664 F.Supp. 241, 245 (E.D.La.1985).

■ A decision denying a motion for a new trial can be overturned only in response to a finding of abuse of discretion. *Franks v. Associated Air Center, Inc.,* 663 F.2d 583, 586 (5th Cir.1981); *Conway,* 610 F.2d at 362–63. Our standard of review is somewhat narrower when a new trial is denied, and somewhat broader when a new trial is granted. *Franks,* 663 F.2d at 586; *Evers v. Equifax, Inc.,* 650 F.2d 793, 796–97 (5th Cir. Unit B, July, 1981). "However, it is the duty of this Court when the evidence furnishes no sound basis for the verdict to reverse a judgment for error of law when the trial court has refused to set the verdict aside." *McKinzie v. Fleming,* 588 F.2d 165, 166 (5th Cir.1979).

■ Because this is a diversity case, state law determines the type of evidence that must be produced to support a verdict but "the sufficiency or the insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard." *McCandless v. Beech Aircraft Corp.,* 779 F.2d 220, 223 (5th Cir.1985), *vacated on other grounds,* 798 F.2d 163, 164 (5th Cir.1986).[2]

---

**2.** There is a split among the federal circuits regarding which standard of review should be applied in this context. The Fourth, Fifth, and Tenth Circuits clearly apply the federal standard for sufficiency of the evidence to uphold a jury verdict. *See Bryan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 565 F.2d 276, 281 (4th Cir. 1977), *cert. denied,* 435 U.S. 943, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978); *Wratchford v. S.J. Groves & Sons Co.,* 405 F.2d 1061, 1066 (4th Cir.1969); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1143 (5th Cir.1985); *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734, 738 (5th Cir.1980); *Peterson v. Hager,* 714 F.2d 1035, 1037 (10th Cir.1983), *on rehearing,* 724 F.2d 851, 853–54 (10th Cir.1984). The Sixth Circuit looks to state law for the standard. *Calhoun v. Honda Motor Co.,* 738 F.2d 126, 129 (6th Cir.1984). The standards of the Eighth Circuit are somewhat unclear; there are cases which apply only the federal standard, *Farner v. Paccar, Inc.,* 562 F.2d 518, 522 (8th Cir.1977) and both the federal and state standard when they are essentially identical, *DeWitt v. Brown,* 669 F.2d 516 (8th Cir.1982). The settled Fifth Circuit standard is binding in this case.

The appellants claimed at oral argument that Texas law merely requires a scintilla of evidence in order to prove damages. This claim is irrelevant, as federal law governs our review of the sufficiency of evidence. But, it also misstates the law. The Texas rule is that as long as there exists more than a scintilla of evidence concerning an issue, a fact issue which should be submitted to the jury is created. *American Mutual Liability Insurance Co. v. Guerrero,* 678 S.W.2d 264, 265 (Tex.App.—Corpus Christi 1984, no writ). Once submitted to the jury, however, the plaintiff in a civil suit for personal injuries bears the burden of proof by a fair preponderance of the evidence. *Bailey v. Whaples,* 435 S.W.2d 626, 627 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.).

The controlling federal standard of review is that all the evidence must be viewed in a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Whatley v. Armstrong World Industries, Inc.*, 861 F.2d 837, 839 (5th Cir.1988), *quoting Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969).

■ A final, important underlying principle of Texas law is that while the amount of damages is largely within a jury's discretion, the jury must award something for every element of damages proved. *Robinson v. Minick*, 755 S.W.2d 890, 894 (Tex. App.—Houston [1st Dist.] 1988, no writ); *Del Carmen Alarcon v. Circe*, 704 S.W.2d 520, 521 (Tex.App.—Corpus Christi 1986, no writ); *Martin v. Warren & Miller Co.*, 639 S.W.2d 706, 709 (Tex.App.—Tyler 1982, no writ).

We have summarized the applicable standards. We now apply them in examining the specific areas of damages in which the jury returned a take nothing verdict for Michael Jones.

### A. *Future Mental Anguish*

■ The jury awarded Michael damages for past but not for future mental anguish. Mental anguish under Texas law is defined as "intense pain of body or mind ... or a high degree of mental suffering." *Cactus Drilling Co. v. McGinty*, 580 S.W.2d 609 (Tex.Civ.App.—Amarillo 1979, no writ). The law presumes that mental suffering will follow severe injury. *Gerland's Food Fair, Inc. v. Hare*, 611 S.W.2d 113, 120 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Texas & New Orleans R.R. Co. v. Cade*, 351 S.W.2d 663, 664 (Tex.Civ.App.—Waco 1961, writ ref'd n.r. e.).

■ Texas courts have agreed that "matters of pain and suffering, ... future disfigurement and future physical impairment are necessarily speculative, and it [is] particularly within the province of the jury to resolve these matters, and set the amount of such damages." *Kraatz v. Faubion*, 617 S.W.2d 277, 279 (Tex.Civ.App.—Eastland 1981, no writ) *quoting Rosenblum v. Bloom*, 492 S.W.2d 321, 325 (Tex. Civ.App.—Waco 1973, writ ref'd n.r.e.). The jury, however, does not have absolute discretion regarding these "speculative" damages.

It is clear from Texas case law that if a serious injury is proved beyond dispute with objective evidence and liability is fixed, a jury's answer of "none" to a damage issue of past mental anguish will be reversed by Texas courts. *Sansom v. Pizza Hut of East Texas, Inc.*, 617 S.W.2d 288, 294 (Tex.Civ.App.—Tyler 1981, no writ). One court, for example, held that a jury finding of no past mental anguish resulting from an accident which involved a cracked rib and multiple (if minor) abrasions and contusions of the forehead and knee was erroneous. *Martin v. Warren & Miller Co.*, 639 S.W.2d 706, 708 (Tex.App.—Tyler 1982, no writ).

The standard for overturning a take nothing judgment for future mental anguish is less clear than that for past mental anguish. It appears, however, that if an objective injury is proved to be a continuing affliction, a take nothing judgment for future mental anguish will also be reversed. In *Crowe v. Gulf Packing Co.*, 716 S.W.2d 623, 625 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) a torn rotator cuff, torn knee, and damaged back resulted in a finding of injury, compensable medical care, disfigurement, and incapacity. The court found it "inconceivable" that a jury could find no past or future mental anguish accompanied these injuries. Future mental anguish was also found to be the "obvious" result of impairment of bowel and bladder sensation and function in *Hammond v. Estate of Rimmer*, 643 S.W.2d 222, 224 (Tex. App.—Eastland 1982, writ ref'd n.r.e.).

There are a number of Texas cases in which some injury was found, but future mental anguish was not awarded. In the vast majority of these cases, however, while the initial injury may have been objectively apparent, the continuing injury

was a subjective complaint all evidence of which originated from the plaintiff. For example see *Chappell v. Dwyer*, 611 S.W. 2d 158 (Tex.Civ.App.—El Paso 1981, no writ) in which Chappell was thrown from the seat of an open car when the driver accidently drove the car into an arroyo. She lost a tooth, had some minor cuts, and was out of school for three weeks. After her objectively ascertainable injuries were healed or remedied, she continued to have complaints of neck pains and headaches. While the jury awarded damages for past pain and mental anguish it awarded nothing for future pain and mental anguish. The court held the jury's finding of fact not reversible.

*Chappell* and cases like it fall within a settled rule of Texas law:

> If the plaintiff has objective symptoms of injury, i.e., a cut or laceration of his body as in this instance, and there is readily available testimony which the defendant could offer to refute such fact, plaintiffs evidence cannot be disregarded by the jury when the defendant fails to refute it.

> On the other hand, if plaintiff's complaints are subjective in nature, i.e., headaches, which the defendant may not readily dispute, then the negative answer of the jury to the damage issue will not be disturbed when it rests upon the testimony of plaintiff alone.

*Dupree v. Blackmon*, 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (Keith, J., concurring). Texas courts of appeal have continuously relied on this objective/subjective distinction in determining whether juries were within their discretion in rendering take nothing awards for future mental anguish. *See Jacobs v. York*, 662 S.W.2d 137, 138 (Tex.App.—Ft. Worth 1983, no writ); *Hammond*, 643 S.W. 2d at 223; *Fillyaw v. City of Beaumont*, 564 S.W.2d 139, 142 (Tex.Civ.App.—Beaumont 1978, no writ). *But cf. Blizzard v. Nationwide Mutual Fire Insurance Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ) (stating that there is no overarching principle in this area).

The difference here is qualitative and not quantitative. In *Martin* the defendant argued that Martin's rib fracture and abrasions were minor injuries, and thus similar to the whiplash cases (e.g. *Hulsey v. Drake*, 457 S.W.2d 453 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.)) in which the only evidence offered has been predicated on the plaintiff's subjective complaints. The *Martin* court rejected this contention, stating that there is no *de minimus* doctrine applicable to damage issues. *Martin*, 639 S.W.2d at 709. *See also Sansom*, 617 S.W.2d at 293. While both *Martin* and *Sansom* addressed past mental anguish, the same principle would logically apply to future mental anguish. Once it has been proved by objective evidence that the injury will continue adversely to affect the plaintiff, the jury may not give a take nothing verdict for future pain, suffering, and mental anguish.

■ Applying these doctrines to the case at hand, Michael Jones suffered from objective physical injuries and hence the jury had less discretion in deciding the future mental anguish issue. The medical testimony indicated that Michael's original hip will last for no more than two years. He will require the implant of an artificial hip at that point, and such a hip could last no more than twenty years. There is a limit on the number of times such an operation can be done, because of the limited number of holes which can be drilled into the natural bone structure to support the artificial hip. Anticipating a normal lifespan, at the optimum Michael could have a hip implanted in the near future, again at age 55, and a last time at 75. During the original surgery to repair the hip, Michael had a life threatening embolism. Each time he has such an operation there is evidence in the record that he is much more likely to have an embolism again than a normal person. Texas law permits recovery for the fear of "future conditions that will, in medical probability, develop from presently existing injuries." *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1138 (5th Cir.1985).

The record indicates, and the testimony from all attorneys concerned with this case confirms, that Michael Jones is an extremely stoic and cheerful person. His demeanor was that of the ideal, but extremely rare plaintiff. When asked if several hip replacements worried him, he stated:

> Well it is a concern, you know. Everytime I get up to do something, I would prefer not to have metal hip put in, but if that is the only way I can get around, that is what I will have to do. It would be, I try not to think about it, but, yes, it is like anything else. Of course, I would be concerned.

When asked about the potential for problems with future emboli Michael never stated that he was worried, but merely that it would be a concern.

In sum, this case presents a plaintiff who in the course of a normal lifespan anticipates at least three major surgeries to replace a crushed hip and a much greater probability of life threatening complications from emboli than the rest of the population while having those surgeries. It is inconsistent to find past mental anguish, as the jury did, but not future mental anguish, when the same circumstances which produced at least some of the previous mental anguish are likely to recur. Regardless of Michael's stoicism under questioning regarding his future health concerns, his circumstances present the objective probability of life threatening situations.

If a torn rotator cuff and damaged knee (*Crowe* at 625) and a cracked rib and abrasions (*Martin* at 708) both were found to necessitate damages for past mental anguish, and impairment of bladder and bowel function and sensation (*Hammond* at 224) was found to necessitate mental anguish in the future, then surely Michael Jones' situation also requires a finding of some future mental anguish. He is exposed not merely to crippling or potentially embarrassing circumstances, but a serious and potentially life threatening one as well.

## B. *Michael Jones' Future Earning Capacity*

Michael's past work history included factory employment and truck driving. Later, all of his jobs were oilfield related and involved heavy manual labor. He worked as a roughneck, in construction, and with companies which manufacture wire rope for the oilfield. At the time of the accident, Michael was a foreman in a warehouse for the Rochester Corporation. He moved large rolls of wire rope, made slings out of the rope, and loaded trucks. While he had the responsibility of training personnel and overseeing their work, he also did heavy lifting himself. He made $11.90 an hour at this job, and he could choose to give himself overtime if any was available. His highest gross pay was $26,000 in the year before the accident.

After the accident, the Rochester Corporation moved Michael to a supervisory position which consisted of desk work rather than the heavy manual labor. Jones testified at trial that he was making roughly $2,000 a month in gross pay, and had just received a cost of living increase. A recent check introduced in evidence indicated that Michael's gross pay per month was $2,063.91. It is clear from the record that Michael Jones took a pay cut of roughly $2,000 a year in order to become a supervisor.[3] Furthermore, he could no longer assign himself overtime, so his capacity for earning extra money was also lessened.

There is no general rule regarding proof required for loss of earning capacity, other than that "each case is judged on its particular facts and the damages need be proved only to the degree to which they are ascertainable." *Tri–State Motor Transit Co. v. Nicar*, 765 S.W.2d 486 (Tex.App.— Houston [14th Dist.] 1989) (1989 Tex.App. LEXIS 43, 15). *See also McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). In Texas loss of earning capacity does not

---

**3.** The appellees take issue with Michael Jones' wage statement, contending that he stated on deposition that he was earning $2,200 a month. At trial, however, it came out that his wife picked up the checks and handled the books, and she testified that he was currently earning a gross of $2,063.

have to be based on any specific degree of physical impairment but rather can be based on a composite of all factors affecting earning capacity. *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 352 (Tex.App. —Corpus Christi 1986, writ ref'd n.r.e.); *Springer v. Baggs*, 500 S.W.2d 541, 544 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.).

■■■ The fact that the injured party earns as much as or more than he formerly did, especially in an employment relationship he had held for years (as in this case), does not bar him from recovering for loss of earning capacity. *Mikell v. La Beth*, 344 S.W.2d 702, 707 (Ct.Civ.App.—Houston 1961, writ ref'd n.r.e.). *See also Trailways Inc. v. Mendoza*, 745 S.W.2d 63, 69 (Tex. App.—San Antonio 1987, no writ); *Southwestern Bell Telephone Co. v. Sims*, 615 S.W.2d 858, 864 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).[4]

■■■ Michael and the Rochester Corporation have done an excellent job of mitigating his damages. Nevertheless, a man who has spent his entire life doing heavy manual labor has switched to an office job. He can no longer climb a ladder, get into the back of a truck, walk down any incline, or carry more than 50 pounds. He can support little or no weight on his right hip. He is clearly unfit for any heavy manual labor of the sort which he did previously. Under Texas law a lessened earning capacity will be presumed when "one, formally in good health and strength, is reduced to the state of a life-long cripple." *Mercer v. Evans*, 173 S.W.2d 206, 211 (Tex.Civ.App. —Fort Worth 1943, writ ref'd). While he is currently doing office work, if at some point in the future Michael lost his job with Rochester for any reason (e.g. company takeover, general layoff, etc.) he would have to go out in the job market again. He not only would be unable to utilize his previous manual labor skills but even in

other potential job opportunities he would be competing with others who do not have his substantial physical limitations.

A relevant case is *Texas Farm Products v. Leva*, 535 S.W.2d 953 (Tex.Civ.App.—Tyler 1976, no writ). The plaintiff was a mechanic who injured his hand. The injury impaired his ability to grip tools. He then entered college and at the time of trial was a sophomore. He hoped to receive his undergraduate degree, enter law school and receive a law degree. The appellate court, nevertheless, took into account the fact there was no certainty that he would get either university degree and he might be required to work with his hands indefinitely. Such a consideration is similar to those which must be examined when considering Michael Jones' career potential.

Given the evidence of salary reduction and physical impairment, he has clearly lost some future earning capacity. This appeal challenges not the sufficiency of the award, but rather the fact that nothing at all was awarded. Since Texas law requires that a jury award something for every proved element of damage resulting from an injury, *Robinson*, 755 S.W.2d at 892; *DuPree*, 481 S.W.2d at 239, we reverse the jury award of no damages for future earnings capacity.

### C. *Past and Future Disfigurement*

Under Texas law, disfigurement is recognized as a separate element of damages. *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 353 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Texas Farm Products*, 535 S.W.2d at 959. Michael sought damages for both past and future disfigurement, but was awarded nothing in either category.

Basically, Shinn Fu and Wal–Mart contend that the take-nothing awards for past and future disfigurement were correct be-

---

**4.** An individual may have been working at 50 percent of his earning capacity before an accident, and afterwards worked at 100 percent of his reduced earning capacity. Therefore, although he is earning more, his capacity to earn has nevertheless been reduced. It may take more hours or greater effort to achieve the same amount of income. Because it is capacity, independent of salary, which may have been reduced, the actual salaries concerned are only evidence but not conclusive. *See Crown Plumbing, Inc. v. Petrozak*, 751 S.W.2d 936, 938–39 (Tex.App.—Houston [14th Dist.] 1988, writ dism'd).

cause (1) the scarring of his leg and hip is not obtrusive enough to constitute disfigurement, and (2) Jones is not embarrassed by it.

Disfigurement has rarely been defined in the abstract in Texas cases, nor has a list of component elements been propounded. The definition utilized in one case was "that which impairs the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, mishapened, or imperfect, or deforms in some manner." *Hopkins County Hospital District v. Allen,* 760 S.W.2d 341, 343 (Tex.App.—Texarkana 1988, no writ). This definition however is too imprecise and all-encompassing to any more than give a broad starting point for our present inquiry.

A number of Texas cases have given disfigurement damage awards based upon scars. *See Hopkins County Hospital,* 760 S.W.2d at 344 (involving one long vertical scar on abdomen as result of surgery to remove sponge mistakenly not removed after Caesarean section); *Northwest Mall, Inc. v. Lubri–Lon International,* 681 S.W.2d 797, 804 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (scar resulting from surgery to implant artificial hip); *Pedernales Electric Cooperative, Inc. v. Schulz,* 583 S.W.2d 882, 886 (Tex.Civ.App. —Waco 1979, writ ref'd n.r.e.) (unspecified permanent scar); *Southwestern Bell Telephone Co. v. Ferris,* 89 S.W.2d 229, 233–34 (Tex.Civ.App.—Dallas 1935, dism'd w.o.j.) (a large and permanent scar on the forehead). In both *Northwest Mall* and *Hopkins County Hospital* the court awarded damages for both past and future disfigurement, whereas in *Pedernales Electric* and *Southwestern Bell* the courts did not differentiate between the two. *But, c.f. Rosenblum v. Bloom,* 492 S.W.2d 321, 325– 26 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.) (an unobtrusive superficial scar on the face which later improved and was removable with a face lift was found to be neither past nor future disfigurement).

Analyzing Michael's past disfigurement claim first, Michael's circumstances most closely parallel those of *Northwest Mall,* which involved another hip surgery scar, and *Hopkins County Hospital.* Both cases involved scars not normally apparent on a person fully clothed, like Michael's, but which still constituted past disfigurement. The court in *Hopkins County Hospital* specifically rejected the argument that because few would ever see Allen's scar it was not disfigurement. *Id.* at 344. Hence under Texas law it is irrelevant whether Michael's scar is normally covered. In any event it is visible when he wears shorts or a bathing suit. As noted *supra,* there is no proper application of a *de minimis* rule to damages under Texas law. *Dupree,* 481 S.W.2d at 219. Michael's present scar meets an objective standard for a past disfigurement award.

Michael's condition also meets an objective standard for future disfigurement. Like Mrs. Spencer in *Northwest Mall,* he anticipates further hip surgery, and each operation can be expected to enlarge the present scar or create new ones. If the present scar meets an objective standard for past disfigurement, reasonably anticipated scars must meet a similar objective standard for future disfigurement.

We must inquire further, however, to see whether the Texas law of disfigurement also requires a subjective element. Some courts have implied that disfigurement includes a mental element of embarrassment or shame caused by an injury. *See Texas Farm Products,* 535 S.W.2d at 959 (upholding an award of damages for disfigurement by saying: "There is evidence ... that appellee was reluctant to show his hand to his wife, that he was embarrassed to shake hands, and that there were some portions on the back of his hand where the tissue was exposed."); *Cornett v. Hardy,* 241 S.W.2d 186, 191 (Tex.Civ.App.—Beaumont 1951, no writ) ("Appellee says that the disfigured hand worried him, causing him embarrassment so he does not go anywhere....").

No Texas court has said, however, that embarrassment is an essential element for recovery of either past or future disfigurement. The closest decision to do so is *Hopkins County Hospital,* where the court noted that "the essential element of

Allen's claim for disfigurement is embarrassment." *Id.* at 343. The statement taken in context seems to imply that most of Allen's complaint centered on her embarrassment, rather than the actual disfigurement she experienced.

 Furthermore, the *Hopkins County Hospital* court explicitly used future embarrassment as the justification for granting a future disfigurement award, although there was no evidence that future scarring or surgery would occur. The court found future embarrassment by itself *sufficient* for the future disfigurement award; it did not hold future embarrassment *necessary* for a finding of future disfigurement. While most disfigurement cases refer to the plaintiff's embarrassment at his injury, two of the scar cases do not. *Southwestern Bell Telephone Co.*, 89 S.W.2d at 233–34; *Pedernales Electric Cooperative, Inc.*, 583 S.W.2d at 886. The law appears to be that embarrassment is a variable which can increase an award for both past and future disfigurement. It can also furnish grounds for future disfigurement by itself. It is not, however, a prerequisite without which no disfigurement will be found.

 Michael Jones has a large permanent scar going from his knee to his hip and across to his spine. There is evidence that he will require at least three more hip operations over the course of his lifespan, each potentially resulting in further permanent scarring. Under Texas law some award must be made for both his past and future disfigurement.

### III. *Harold Jones' Damages*

At oral argument Wal–Mart and Shinn Fu conceded that the take nothing judgment for Harold Jones was incorrect. His foot was crushed, screws went into it, and although no bones were broken, he was unable to walk properly for eight weeks and experienced considerable pain. He was damaged to some amount by this injury. Because the appellees concede this point we see no need for extensive analysis regarding Harold's damages. We merely reverse the judgment for complete reconsideration of damages at a new trial

### Conclusion

We uphold the trial court's finding on liability but reverse for a new trial on the issue of all damages for both Michael and Harold Jones except for the stipulated medical expense damages in the case of Michael Jones.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.