See also 744 F.Supp. 77.

**Betys GREENSPON, Plaintiff,**

v.

**SUPERMARKETS GENERAL CORPORATION, Defendant.**

**No. 87 Civ. 7029 (RPP).**

United States District Court, S.D. New York.

Nov. 5, 1990.

David Jaroslawicz, New York City, for plaintiff.

Kral Clerkin Redmond Ryan Perry & Girvan, William G. Kral, Mineola, N.Y., for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Betys Greenspon moves pursuant to Rule 50 of the Federal Rules of Civil Procedure to set aside the jury's verdict granting damages to the plaintiff in the amount of $431,000, and for a new trial. Defendant cross moves for an order pursuant to Rule 59(e) amending the verdict to effect a reduction of $112,000.

■ Plaintiff points to the jury's failure to award damages for past medical expenses of $1,813 for therapy and health care, which counsel for plaintiff and counsel for defendant state were stipulated, as evidence of jury haste and inconsistency. Although the Court's trial notes show there was evidence of $1,813 in such medical expenses, they do not reflect that the presence in the record of a stipulation by counsel to past medical expenses being unreimbursed. It is the Court's recollection that the parties did not enter into such a stipulation during the trial and that counsel did not refer to any such stipulation during

summation or during counsel's consideration of the charge or the special verdict form. The Court's notes reflect that medical expenses of the hospital and treating physicians were testified to as reimbursed. Since the $1,813 expense reflected by bills from Nyack Hospital was at least in part for doctor and health aide visits, it was not made clear to the jury or the Court that there were unreimbursed expenses.[1] Since counsel for defendant concedes these medical expenses were paid by plaintiff and not reimbursed, the Court will, rather than order a new trial on the issue of damages for medical expenses incurred, amend the verdict by increasing the total verdict by $1,813. *See Jones v. Walmart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir.1989), *reh'g denied*, 1989 WL 31496, 1989 US App LEXIS 7060 (1989).

■ With respect to the remainder of the jury's verdict, the plaintiff's motions are denied. The plaintiff has not made a sufficient showing that the remainder of the verdict was against the weight of the evidence. The jury's factual findings are entitled to substantial deference. *See, e.g., Wheatley v. Beetar*, 637 F.2d 863 (2nd Cir. 1980). A trial judge will "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2nd Cir.1978) (quoting from 6A *Moore's Federal Practice*, § 59.08[5] (1973)). For the reasons stated below, the Court finds that there is no "seriously erroneous result." *Id.* The cross motion is also denied for the reasons stated below.

The plaintiff's arguments about jury haste are without foundation. With no liability issue at stake, three hours is a reasonable period for a jury to deliberate. Furthermore, there seems little reason to believe the oncoming Jewish holidays caused the jury to "rush their verdict." Jurors invariably tell the Court or the Deputy Clerk prior to retiring that they must leave at a particular time in order to meet

---

1. There was testimony that Dr. Brody's charges in 1987 were not covered by health insurance and that the plaintiff had not paid those charges.

the requirements of their religion or for other reasons. No communications of this sort were received from the jurors. The only person who did express concern about the Jewish days of observance was plaintiff's attorney, and his deadline had not been reached when the verdict was returned. The fact that no notes were received other than the request for a calculator immediately upon retirement is not evidence of a hasty or confused jury, but one which was intent upon embarking on its tasks.

Secondly, the amounts awarded by the jury must be analyzed, taking into consideration the nature of the plaintiff's injury, the nature of her prior condition, medical prognosis, and the evidence presented relevant to those factors. The Court finds the various determinations made by the jury are not inconsistent, but are consistent with the weight of the evidence and are entitled to deference.

The plaintiff, a polio victim from the age of three, suffered a broken humerus in her left arm as a result of a fall caused by a defective sliding door in a Rickels Home Center owned by the defendant. The accident occurred on September 2, 1987. Plaintiff was treated at the Nyack Hospital emergency room but was not admitted to the Hospital. Instead, she convalesced at home. At the time of the accident, plaintiff was using crutches but had generally used a wheelchair as her main means of locomotion. She was 35 years of age, married and had two children. The essence of plaintiff's claim is that the accident caused her to lose the use of her left arm, her stronger arm, which prevents her from walking any distance with crutches, limits her in household duties, and in many other aspects of life which she had enjoyed prior to the accident.

The plaintiff testified that, from age 3 into her early teens, she had been subjected to extensive surgery and other post-polio

medical treatments which enabled her to stand and walk with the assistance of crutches. She testified to her treatments and physical condition in considerable detail and gave every appearance of being, as one of the physicians described her, a "gung ho" individual who conquered adversity by whatever means was available to her. Plaintiff also testified that she was six months pregnant in a pregnancy which she and her husband had planned before the accident.

The medical testimony at trial centered on whether curative surgery existed so that she might regain the former use of her left arm, whether supervised rehabilitative exercises could improve that condition and whether "post polio syndrome" or a loss of function caused by polio either was partially responsible for her present condition or would affect it in the future.

The jury was faced with the difficult task of determining to what degree she would have future medical expenses, future rehabilitative expenses, and other expenses as a result of her accident, as a result of her polio condition, or as a result of the interrelation of those two factors.

The medical experts' prognoses as to plaintiff's ability to regain the use of her left arm were in disagreement.[2] Testimony was elicited that due to her polio her physical condition would get progressively worse and she would have neither a normal work expectancy or normal life expectancy. The clear inference was that the accident would cause her greater medical and medical-related expenses in later years in the form of doctor visits and home nursing care, wheelchairs, and specially constructed automobiles, and other expenses. There was unanimity of medical opinion that her condition would become progressively worse from which the jury could reasonably infer that the plaintiff would have greater pain and suffering due to the acci-

**2.** Plaintiff in this motion relies on the testimony of defendant's witness, Dr. Sverdlik, that plaintiff should undertake a supervised rehabilitation exercise program to support her claim that the jury should have awarded damages for future rehabilitation expenses. However, plaintiff's position at trial supported by her medical experts was that such therapy would not improve her present condition. In the Court's view, the jury accepted plaintiff's medical experts' view and rejected Dr. Sverdlik's testimony on rehabilitation possibilities.

dent, in later years. Taking this view of the proof the jury's discounted figure of $112,000 for future medical expenses due to the accident, particularly toward the end of the next 20 years, is not unreasonable. Nor is its finding for future pain and suffering or other future expenses.[3]

With respect to impairment of earnings, the evidence was also difficult to assess. Plaintiff's earnings from 1983 to 1986 averaged approximately $5,000 a year. After the accident, she became a naturalized citizen and obtained regular employment with the FBI as a translator in a security sensitive unit, earning substantially more income. She became a permanent employee almost immediately after her convalescence, but only works part-time. In view of these facts, the jury award of $5000 for lost earnings in the past, which would more than cover the period of plaintiff's convalescence, does not seem unreasonable.

With respect to whether the jury awarded insufficient damages for loss of earnings because plaintiff has been unable to work full-time for the FBI, the defense took the position that plaintiff had never worked full-time, either prior to or after the accident, and that, therefore, the assumptions of plaintiff's expert witness, Dr. Richard Ruth, in that regard were unreasonable. Dr. Ruth's assumptions in this regard were based on plaintiff's testimony that after the accident she would have worked full-time but for the effect of the accident on her physical condition. The jury had to weigh plaintiff's testimony against plaintiff's prior work record, as well as her physical ability to work full-time due to her previously existing handicap. In the Court's view the jury decided not to accept Dr. Ruth's and plaintiff's testimony in this regard, and determined that either plaintiff's prior condition had not permitted full-time work or that plaintiff did not desire to work the greater number of hours involved in view of family obligations or for other reasons.[4] The award for future impairment of earnings was awarded in the Court's view for compensation for plaintiff's reduced work expectancy caused by the accident over and above her reduced work expectancy as a result of her progressive loss of function due to her severe polio illness. Even if the verdict were seemingly inconsistent, which the Court finds it is not, a jury verdict will be upheld if the Court can view the case in a way "that resolves any seeming inconsistency in the jury's verdict." *Machleder v. Diaz*, 801 F.2d 46, 57 (2nd Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987). The Court views this verdict as consistent and entitled to deference.

Defendant's cross motion to reduce the jury's verdict for future medical expenses in the amount of $112,000 is denied because the Court is unable to find under the proof in this case that, with reasonable certainty, plaintiff will be indemnified with respect to such expenses from any collateral source. As the special jury verdict form reflects, such damages were found as being incurred over a period of the next 20 years. The medical testimony included testimony that, largely due to her polio, plaintiff's physical condition would get progressively worse in the next fifteen to twenty years, and the clear inference was that she would be unable to work during the latter part of that period. Thus, she would not be insured by her employer's health coverage plan. Particularly, there was no showing that home nursing care, the most likely expense for which the jury made its award, would be a reimbursable expense as required by Section 4545 of the C.P.L.R.

The motion and cross motion are denied.

IT IS SO ORDERED.

---

**3.** Other future expenses related to increased maid service, devices installed in her motor vehicle to enable her to drive to work, wheelchairs, etc., or remodelling of portions of the home. Some of these, of course, could have been considered medically related.

**4.** In several aspects Dr. Ruth's testimony and that of plaintiff's architectural witness were not sufficiently supported to have much credibility.