**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 90-6036
_____

JAMES YARBROUGH, Individually and as Next Friend of
ROBERT YARBROUGH, a Minor,

Plaintiff-Appellee,

VERSUS

STURM, RUGER & CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(June 15, 1992)

Before WISDOM, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

After a minor was injured by a gun he had stolen, he and his family brought a products liability action against the gun's manufacturer, Sturm, Ruger & Co., Inc. ("Sturm, Ruger"), alleging that the gun was defectively designed. After an initial trial in which the jury returned an inconsistent verdict and, upon further consideration, pronounced itself unable to agree on a resolution of the suit, the district court, over Sturm, Ruger's objections, accepted the jury's findings as to liability and impaneled a second

jury to determine damages. Sturm, Ruger appeals, arguing that the first jury verdict represented an impermissible compromise. Sturm, Ruger also raises some evidentiary and procedural issues. We vacate and remand for a new trial on all issues.

I.

Robert Yarbrough was thirteen years old when he and fourteen-year-old Rusty Cowart stole a number of guns and other property from at least two houses in their neighborhood. One of those guns was a .44 caliber Sturm, Ruger single action revolver ("the revolver"). Yarbrough and Cowart carried the firearms around in a paper bag, apparently playing with them and attempting to sell them. Although the boys had found the revolver unloaded, they obtained ammunition and carried it fully loaded, with the hammer forward over a live cartridge.

A few days after the theft, while Yarbrough and Cowart were, ironically, walking past the house from which they had stolen the revolver, after failing to sell the stolen firearms, one boy began to hand the bag to the other. The bag either dropped or gave way. The revolver hit the pavement and discharged, wounding Yarbrough in the leg, which eventually was amputated above the knee.

II.

Yarbrough and his family brought this lawsuit against Sturm, Ruger on theories of negligence, strict product liability, and failure to warn; they later reduced their claim to one of product

liability, based upon defective design. Sturm, Ruger based its defense upon the lack of design defects when the gun was manufactured in 1962, the adequacy of the warnings that accompanied the gun at that time, and Yarbrough's contributory negligence.

The jury returned an initial verdict stating that the revolver was defectively designed and that the defect caused Yarbrough's injuries. It found Sturm, Ruger 60% liable and Yarbrough 40% liable for those injuries.

In response to the special interrogatories, the jury awarded $50,000 for past medical expenses, $250,000 for future medical expenses, and $100,000 for past disfigurement, for a total of $400,000. It entered zero as the award for future disfigurement, past and future physical impairment, past and future mental anguish, past and future pain and suffering, and past and future lost earning capacity.

The district court determined that the inconsistency between the finding of liability and the various damage awards were "inconceivable" and "absolutely unbelievable." It denied Sturm, Ruger's motion for a mistrial and told the jury to reconsider, instructing the jurors that if they unanimously agreed on liability, they must assess damages for the unquestionable injuries. The court further reminded the jurors that they were to consider the issues of liability and damages separately. The jury deliberated for another four hours before informing the court that it was "unable to agree on a resolution of this lawsuit."

In response to the court's efforts, in open court, to understand the verdict, the jury foreman stated as follows:

> On the money that was awarded, everybody has sort of agreed to that particular figure. But there was arguments on how that figured down the line. I mean, that was our argument on the liability end and on the negligence, injury and pain . . . . I think we were trying to come up with a dollar figure that would be reasonable to get him to an even start in life now with perhaps something to give him a boost so he can go on with his life.

Another juror averred that the jury's conflict on the liability issue had caused it to reach an incomprehensible damage award.

The court then denied Sturm, Ruger's renewed motion for a mistrial and accepted the verdict on liability but severed the damage issue and impaneled another jury to determine it. The second jury awarded damages for each element of Yarbrough's injury, returning an award of $422,000, only $22,000 greater than the total the first jury awarded. Sturm, Ruger's motion for a new trial was denied, and it filed a timely appeal based upon the denial of a mistrial; the exclusion of evidence about how Yarbrough acquired the gun; alteration of an evidentiary stipulation; and the district court's allegedly biased behavior and questioning of witnesses.[1]

III.

Sturm, Ruger argues that the district court erred in denying its motions for a mistrial because of the apparent compromise

---

[1] Sturm, Ruger has not asserted, in this case, that the public policy of Texas forbids the awarding of damages to those who are injured by firearms they steal. Accordingly, we assume, arguendo, that products liability may be imposed under such circumstances.

4

verdict.  We reverse a district court's ruling on a motion for new trial only for abuse of discretion.  Lucas v. American Mfg. Co., 630 F.2d 291 (5th Cir. 1980) (citing Silverman v. Traveler Ins. Co., 277 F.2d 257 (5th Cir. 1960)).

If the record indicates that a liability verdict stemmed from a compromise on damages, the complaining party is entitled to a new trial, for considerations of damages should not taint the initial question of the defendant's fault.  Westbrook v. General Tire & Rubber Co., 754 F.2d 1233, 1242 (5th Cir. 1985).  In determining whether a jury reached a compromise verdict, we examine the "totality of circumstances" and consider any indicia of compromise apparent from the record and other factors that may have caused a verdict for damages that would be inadequate if the jury actually found liability.  Pagan v. Shoney's, Inc., 931 F.2d 334, 339 (5th Cir. 1991).[2]  After examining the jury verdict and the record of the case, we believe that the verdict stemmed from an impermissible compromise.[3]

---

[2]    In Pagan, 931 F.2d at 339, we discussed the factors that courts have considered in determining whether the jury compromised.  In Hatfield v. Seaboard Air Line R.R., 396 F.2d 721, 723 (5th Cir. 1968), the factors included whether the issue of liability was strongly contested, whether the jury was confused concerning contributory negligence, and whether either party urged the district court to accept the jury's verdict.  The Eleventh Circuit also has examined whether the jury requested additional instructions or attempted to qualify its award.  See Burger King Corp. v. Mason, 710 F.2d 1480, 1488 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984).  Perhaps most relevantly, the Tenth Circuit has held that an award of only nominal damages, coupled with either a disregard for uncontested and obvious damages or an award of only out-of-pocket expenses, raises the suspicion of a compromise verdict.  National R.R. Passenger Corp. v. Koch Indus., 701 F.2d 108, 110 (10th Cir. 1983).

[3]    The verdict and the record of the trial provide us with sufficient basis to believe that the verdict was tainted, and thus we need not consider the statements of the jurors, which evidence is not favored, although here it gives us even more comfort.  See McDonald v. Pless, 238 U.S. 264 (1915).

The first, and most important, evidence of a compromise is in the verdict form itself. It is inconceivable that the jury could find liability and then award damages for past but not future disfigurement, for past and future medical expenses but not for past and future pain and suffering, mental anguish, and lost earning capacity. Sturm, Ruger did not dispute that Yarbrough was seriously injured and that his injury would cause him impairment and disfigurement for the rest of his life. If he was disfigured in the past, he will be disfigured in the future; his leg will not grow back.

Further, in contrast to <u>Pagan</u>, where another basis for the jury's improper award existed, this case suggests no alternative explanation for the jury's verdict. The fact that the jury awarded distinct sums for past medical expenses, future medical expenses, and past disfigurement does not indicate that it intended to make a general award of damages in the sum of $400,000 or that it merely misunderstood the purpose of the special interrogatories. Even more significantly, the jury did not leave the space for an award of damages for future disfigurement blank but entered zero as the amount it wished to award.[4]

Second, although Sturm, Ruger vigorously contested liability, it hardly challenged Yarbrough's claims of damages during the first trial. Although not determinative, such a fact indicates that the jury's ostensible difficulty in finding a satisfactory damages

---

[4]    <u>Cf.</u> <u>Pagan</u>, 931 F.2d at 340 (jury's failure to answer interrogatory, rather than entering "zero" or "none," strengthens argument that jury considered damages duplicative).

award was complicated by continuing disputes over liability. <u>See</u> <u>Hatfield</u>, 396 F.2d at 723. As the California Supreme Court has noted, "A refusal to allow for undisputed special damages is usually convincing evidence that a jury failed to make a decision on the liability issue." <u>Hamasaki v. Flotho</u>, 248 P.2d 910, 912 (Cal. 1952), <u>quoted in</u> <u>Mutuelle Electrique D'Assurances v.</u> <u>Hammermills, Inc.</u>, 786 F.2d 840, 843 n.7 (8th Cir. 1986). The fact that the jury requested the transcript of the deposition testimony of the revolver's designer, William Ruger, indicates serious consideration of the liability issue, as Mr. Ruger offered no insight into the issue of damages.

Third, neither party was satisfied by the initial verdict. <u>See</u> <u>Hatfield</u>, 396 F.2d at 723. Yarbrough's attorneys requested that the court add damages to the jury's findings; Sturm, Ruger, of course, moved for a mistrial.

Fourth, the failure of the first jury to reach an agreement after four hours of further deliberation, after the district court instructed it in how to prepare an acceptable verdict form, shows that the jury must have been having a problem regarding liability. That it could not prepare such a form suggests that it was deadlocked by the terms of its initial compromise.

Fifth, Yarbrough's contention, that the fact that the damages awarded by the second jury were not inconsistent with those awarded by the first shows that the severance of issues did not prejudice Sturm, Ruger, misses the point. If the finding of liability by the first jury was based upon a compromise, then the second jury was

7

allowed to rely upon a tainted finding that had served only as the tradeoff for the first jury's damages award. See Westbrook, 754 F.2d at 1242. Again, the damages were not vigorously contested at the first trial; liability was a more disputed issue.

This case may lack the strong examples of improper judicial behavior or juror confusion that were present in some of the cases in which we have found impermissible compromises.[5] Nevertheless, the record reveals substantially more facial evidence that the verdict was compromised, i.e., that the jurors had agreed on an amount of damages they wanted to award Yarbrough and then reached their liability finding based upon that.

As an empirical matter, it may be that many juries make such compromises. Nevertheless, although we do not favor questioning verdicts, when we are faced by the obvious facial contradictions between the verdict and the evidence presented, in circumstance such as those that prevailed here, we cannot agree that the district court should have retained a liability finding that apparently was deliberately made to reach a certain amount of damages, for the parties are entitled to independent findings of damages and liability. See Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931); Colonial Leasing v. Logistics Control Int'l, 770 F.2d 479, 481 (5th Cir. 1985).

---

[5]  See, e.g., Lucas v. American Mfg. Co., 630 F.2d 291 (5th Cir. 1980) (jury had been instructed to deliberate for no more than fifteen minutes because of an approaching hurricane); Hatfield (jury members had exhibited confusion about contributory negligence, and the jury took two days to reach its verdict).

IV.

Having concluded that the district court abused its discretion in denying the motion for a new trial, we need not consider the other issues that Sturm, Ruger raises on appeal. Nevertheless, because the matter is certain to arise when the case goes to trial again, we address one of Sturm, Ruger's evidentiary concerns.

Sturm, Ruger contends that the district court abused its discretion by disallowing evidence that Yarbrough stole the revolver SQ evidence necessary for a proper factual determination of causation and comparative negligence. The court excluded such evidence based upon the balancing test required by Fed. R. Evid. 403. We review such a determination for abuse of discretion. <u>See</u>, <u>e.g.</u>, <u>Wright v. Hartford Accident & Indem. Co.</u>, 580 F.2d 809, 810 (5th Cir. 1978).

Sturm, Ruger is correct that evidence of the theft would have been probative of Yarbrough's negligence and lack of knowledge about the gun. The court allowed a stipulation that Yarbrough had possession of the revolver at the time of the accident without the permission of its owner. The stipulation did not, however, inform the jury that Yarbrough, through stealing the gun, rather than perhaps borrowing it from someone in rightful possession, willfully put himself out of the way of any warnings about the revolver's dangers or instruction as to its use.

Indeed, through his efforts to hide his wrongful possession, Yarbrough necessarily avoided instructions or warnings of any

9

type.[6]  Moreover, because he had stolen the weapon and was engaged in trying to sell the guns, Yarbrough was transporting a loaded weapon in a careless, concealed manner that predictably increased the risk of harm.  Such information would be vital for the jury's consideration of Yarbrough's relative fault, see, e.g., Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 428 (Tex. 1984) (Texas courts compare plaintiff's conduct with conduct or product of defendant), and the court's exclusion of it makes it impossible for Sturm, Ruger to present its defense fully, unfairly prejudicing the company.

Instead, the court sanitizes Yarbrough's conduct, and Sturm, Ruger was deprived of the opportunity to have any fault attributed to it compared to the fault of the plaintiff.  See Duncan, id.  In such a context, we cannot say that permitting the introduction of the evidence would unduly prejudice Yarbrough, and hence such evidence should be admitted in the new trial.

We thus VACATE the judgment and REMAND for a new trial on all issues.

---

[6]    See Ramirez v. Volkswagen of Am., Inc., 788 S.W.2d 700, 705 (Tex. App. SQ Corpus Christi 1990, writ denied) (evidence of product liability plaintiff's earlier barroom brawl properly admitted as tending to establish his motive and state of mind and was "clearly critical" to establish that he had been driving at great speed).

10