# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2010

Lyle W. Cayce
Clerk

No. 10-40162
Summary Calendar

ALESIA DIETZ,

Plaintiff - Appellant

v.

THOMAS A. GARSKE,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CV-900

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Alesia Dietz appeals from the denial of her motion for a new trial following a jury award of damages. She contends the district court erred in denying her motion because the jury's award was impermissibly inconsistent and against the great weight of the evidence. We AFFIRM.

In May 2006, Dietz was injured along an interstate highway in east Texas when her vehicle was struck from the rear by a vehicle driven by Thomas

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40162

Garske. Dietz filed a negligence action against Garske in Texas state court. Garske removed the case based on diversity to the United States District Court. After a jury trial, Dietz was awarded damages for past and future medical expenses, past physical pain and mental anguish, and past physical impairment. The jury awarded no damages for future physical pain, future mental anguish, future physical impairment, and future disfigurement. Dietz's motion for a new trial was denied. After entry of judgment on the verdict, Dietz appealed.

A motion for a new trial challenging the weight of the evidence should be denied "unless the verdict is against the great [weight], not merely the preponderance, of the evidence." *Jones v. Wal-Mart Stores, Inc.,* 870 F.2d 982, 986 (5th Cir. 1989). We review the district court's decision denying a motion for a new trial for abuse of discretion. *Id.* "The district court abuses its discretion . . . only when there is an absolute absence of evidence to support the jury's verdict." *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (citation omitted). The reviewing court gives somewhat more deference to the district court's ruling where, as here, "the district court has denied the new trial motion . . . and left the jury's determinations undisturbed." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) (citations omitted).

In diversity cases, state law governs the type of evidence necessary to support the verdict, but the sufficiency of the evidence is governed by a federal standard. *Jones,* 870 F.2d at 986. The federal standard requires that we view the evidence and all reasonable inferences in the light most favorable to the jury's determination, disregarding its verdict only if the evidence is so strong that a reasonable person could not have found as the jury did. *Id.* at 987.

"Under Texas law, once liability is established, a jury must award *some* amount for each element of damages that is objectively proved." *Jackson v. Taylor*, 912 F.2d 795, 797 (5th Cir. 1990). Dietz argues that the jury's failure to award her damages for future pain, future mental anguish, and future

No. 10-40162

impairment requires a new trial, as both plaintiff and defendant's medical experts testified that she may continue to have problems with her neck. Dietz did not brief and thus has waived any argument as to the jury's failure to award her damages for future disfigurement. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

Dietz was diagnosed with whiplash the day after her automobile accident. A month later, Dietz visited Dr. Clark Gunderson, an orthopedic surgeon, who diagnosed her with a cervical and lumbar strain, prescribed medications and physical therapy, and recommended she return in one month. She did not attend physical therapy and came back two months later complaining of continued neck and back problems. She also complained of numbness and tingling in her hand. Based on these subjective complaints, Dr. Gunderson refilled Dietz's prescriptions, advised her to attend physical therapy, and recommended she return in a month.

Sixteen months passed before Dietz sought treatment for neck or back pain. Dietz visited Dr. Gunderson in December 2007. He refilled her prescriptions and ordered physical therapy. Dietz attended six physical therapy sessions. She returned to Dr. Gunderson in February 2008, and he prescribed additional medications and ordered an MRI of her cervical and lumbar spine. The radiologist's report indicated that Dietz had a small disc herniation at C5-C6 and a bulging disc at C4-C5 and C6-C7.

Dr. Gunderson reviewed only the radiology report, not the MRI films. He recommended a cervical discogram, a procedure where dye is injected into the spine to locate which disc is causing discomfort. Nineteen months passed and no discogram was conducted. Dietz saw Dr. Gunderson once in this extended period. Although Dietz saw other physicians during this time for unrelated medical concerns, she did not report having any injuries, neck pain, tingling, or numbness.

No. 10-40162

Dr. Gunderson testified at trial that Dietz has a small ruptured disc and that she will live with pain without surgery. He admitted on cross-examination, though, that the bulge is not large and that he did not know whether the MRI actually showed nerve root impingement. He testified that he had not recommended surgery and could not testify that Dietz needs surgery until a discogram is conducted. Dr. Gunderson conceded that he mainly relied on Dietz's subjective complaints in formulating his diagnosis. He also admitted that Dietz's failure to attend physical therapy as prescribed may have contributed to her problem.

Garske requested an independent medical examination. Dr. David Edelstein, a board-certified orthopedic surgeon, examined Dietz and viewed the MRI films. He disagreed with the radiologist's findings that Dietz had any abnormality at levels C4-C5 and C6-C7. He concluded that her only abnormality is a mild bulge at C5-C6, but the disc is not herniated or encroaching upon the spinal canal. Dr. Edelstein stated that Dietz's subjective complaints were inconsistent with the objective findings from the MRI. He concluded that surgery was not necessary because any potential future pain could be controlled with very minimal follow-up care, including medications, exercise, or physical therapy. Dr. Edelstein expected Dietz to have a normal life with no restrictions on her daily activities.

Dietz testified that neck pain and hand numbness and tingling prevented her from holding her infant for long periods of time and from doing other activities, such as cleaning her house. The jury also was presented evidence that contradicts that Dietz's activities were impaired. Dietz acknowledged her injuries have not prevented her from working outside the home. In an employment application dated July 9, 2007, Dietz marked that no doctor had ever restricted her activities, she had never been assessed any percentage of disability to any part of her body, she was not presently under medical care or

taking any medication, and she was not aware of any condition that might impair her ability to work. In a pre-employment physical conducted that same day, the examining doctor reported that her head, neck, and extremities were normal.

Deitz relies on two decisions of this court to support her arguments that the district court erred. The later of the two precedents is distinguishable because it was a Jones Act negligence claim. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178-79 (5th Cir. 2005). Regardless, the relevant part of *Brown* quoted language from the earlier decision that Deitz also relies upon, so we consider that language in discussing the first case. *Id.* at 179 n.11 (quoting *Yarbrough v. Sturm, Ruger & Co.*, 964 F.2d 376, 379 (5th Cir. 1992)).

In *Yarbrough*, the thirteen-year-old plaintiff accidently shot himself in the leg; the leg later was amputated. *Yarbrough*, 964 F.2d at 377-78. He brought a product liability suit under Texas law against the firearm's manufacturer. Although the jury awarded damages for past and future medical expenses and for past disfigurement, no damages were awarded for future disfigurement or for physical impairment, mental anguish, or pain and suffering. *Id.* at 378.

The district court held that this award was "inconceivable" and "absolutely unbelievable" because of the inconsistency between the jury finding of liability and the damages award. *Id.* The district court denied the defendant's motion for a mistrial, accepted the verdict as to liability, and empaneled another jury to determine damages. *Id.* We agreed it was inconceivable the injured boy would be entitled to damages for past disfigurement but not for future disfigurement; his lost leg would not grow back. *Id.* at 379. A lost limb necessarily entails past and future physical impairment, and thus the jury should have awarded those damages. *Id.* We also found that the defendant hardly contested the claims of damages, and instead focused on showing there was no liability. *Id.* These circumstances made it clear that the verdict was

No. 10-40162

either simply irrational or based on an improper compromise; the facts of the case support no other explanation for the outcome. *Id*. at 379-80.

By contrast, here there are other explanations. The jury's decision to award Dietz future medical expenses does not conflict with its refusal to award damages for future pain, mental anguish, and impairment. Dr. Edelstein testified that any potential pain could be controlled with minimal follow-up care, including medications, exercise, or physical therapy. Thus, there was evidence on which jurors could rely that Dietz would not have future pain. This record supports that jurors might reasonably have concluded that the need for future medical care would not equate to a likelihood of future pain, making consistent the award for medical care without an award for pain. The jury's award for past impairment but not future impairment also is not conflicting because there was evidence Dietz no longer was impaired.

We conclude that the jury verdict was not counter to the great weight of the evidence. The district court did not abuse its discretion in denying the motion for a new trial.

AFFIRMED.